## SMITH v. ATLANTA & CHARLOTTE AIR LINE RAILWAY CO.

(Filed June 6, 1903.)

1. EVIDENCE—*Sufficiency of Evidence—Negligence—Contributory Negligence—Proximate Cause—Master and Servant*

The evidence in this case is sufficient to be submitted to the jury upon the issues of negligence of defendant, contributory negligence of plaintiff and the proximate cause of the injury.

2. NEGLIGENCE—*Ordinances—Speed of Train.*

The running of a train at a greater speed than is allowed by an ordinance is evidence of negligence.

3. NEGLIGENCE—*Railroads—Master and Servant—Signals—Rules of Railroad Company.*

It is the duty of an engineer of a railroad company to use all proper and reasonable efforts to avoid injuring other servants of the company engaged in their work and to observe the rules laid down by the company.

ACTION by Fred. Smith against the Atlanta & Charlotte Air Line Railway Company, heard by Judge *Thomas J. Shaw* and a jury, at January Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appealed.

*Burwell & Cansler,* for the plaintiff.
*George F. Bason,* for the defendant.

CONNOR, J. The plaintiff being in the employment of the lessee of the defendant was on the date of the injury complained of sent to paint switch targets, and at the time of the injury was painting a target the center of which was four feet from the center of the west rail of the defendant's track. The flange of the switch target extended from the center of the target toward the rail six inches. The engine extended over the track and towards the switch target as follows: Tender frame 23 1-2 inches, punch pole 24 inches, the step be-

tween the engine and tender 29 inches and the cylinder 26 inches. While engaged in painting the target, the plaintiff set his bucket, containing paint, down near the rail. A shifting engine and tender were passing back and forth over the tracks, and just before this engine reached the point where the plaintiff was at work he reached over to put his brush in the bucket and was instantly stricken by the shifting engine, which was backing up towards him.

The plaintiff put in evidence certain rules of the defendant company, *Rule W* being, "Whenever any person, animal or other obstruction appears upon the track, or so close thereto, as to be in danger, then instantly the following precautions must be observed: First, the alarm whistle must be sounded; second, the brakes must be applied; third, every other possible means must be employed to stop the train and prevent the accident. If there is time, all of these requirements must be complied with. If by reason of the speed of the train, or the suddenness of the obstruction, only a part of these precautions can be observed, then such of them, as under the particular facts of each case are best calculated to prevent a possible accident, must be observed." "*Rule 66*. The unnecessary use of the whistle is prohibited. When necessary in shifting at stations and in yards, the engine bell shall be rung, and the whistle used only when required by rule or law or when necessary to prevent accident." "*Rule 121*. In all cases of doubt or uncertainty, take the safe course and run no risks."

The plaintiff testified that he was familiar with these rules and that the switch engine was moving backwards and forward in the yard of the defendant's tracks; that he went to work and put his bucket right down beside the switch and started to paint the target; had been engaged in the work about ten or fifteen minutes when the engine came and knocked him down. That is the last he remembers. That he heard no bell ringing

or any whistle blown, or any warning of any kind given; that he was stricken about half an inch from the left temple on the forehead, going across the top of his head, and the bone on the left eye was broken or injured, and he was thrown on the right side of his shoulder, and was stricken across the breast, and suffered from his chest for a long time afterwards. Witness illustrated to the jury his position and that of the target and of the engine. Said he was relying on the rules, of which he knew, for his protection. That it was impossible for him to do the work well and at the same time keep a constant lookout for the movements of the engine. That if he put his whole attention on the painting he could not be on the lookout all the time. When he looked down he looked both ways. Looked down and did not see any engine. Thought he could get through painting before the engine came out of the coach-yard, and if it did come out he expected it to ring the bell or blow the whistle to give him warning. It was necessary for him to keep his eye on the target while he was painting because there were two colors. Had been employed by the defendant company for about three years; says he did not hear the bell ring. That he put his bucket over next to the rail, illustrating the position in which he stood and the point at which he put his bucket by means of photographs offered in evidence. The track was pretty fair, level and straight.

On re-direct examination plaintiff stated that when he was doing this work in the manner he had shown the jury he was relying upon the rules of the company and the ordinance of the city of Charlotte for his protection. Wouldn't say that he had nothing else in mind. Thought if the engine came it would give some signal to get out of the way.

Plaintiff introduced Sherman Ludwick, who testified that he was a short block from where the plaintiff was painting. Saw him painting the target. When the train passed up the

track and struck Mr. Smith, the witness heard them "holler;" saw the engine; heard no bell ringing; no bell was ringing; could have heard it if it had been; the train was running twenty-five or thirty miles an hour.

The plaintiff introduced Kerry Reynolds, who testified that he was about 100 feet from the plaintiff at the time of the injury. The train was running thirty miles an hour. He says he saw that the plaintiff was in danger and "hollowed" at him twice to look out, and about that time it struck him.

Thomas Robinson, introduced by the plaintiff, says that he was working fifteen or twenty feet from the plaintiff; that the switch engine was coming from the depot with a sleeper, and when it went down the main line it came in the coachyard. The witness was busy wiping off the coach; the plaintiff was painting. The last witness saw the plaintiff; the engine was as far as from "here to the middle of the street," and the witness heard Grant Wallace "hollow" "I think we have struck Mr. Smith." I looked around at the engine and saw Grant pull the bell cord, and saw the plaintiff; did not hear the bell ring until after the plaintiff was struck, could have heard it ring; the train was moving twenty or twenty-five miles an hour; the engineer was on the opposite side from the plaintiff; saw nobody on the left hand side; the fireman did not seem to be in his place.

M. L. Harris, witness for the plaintiff, testified that the train was running ten to fifteen miles an hour; heard no bell; could have heard it if it had been ringing; heard no whistle blow.

The defendant introduced the engineer, who testified that he saw the plaintiff painting and passed him several times; "I reckon a dozen times;" that he was not in his way, and if he had stayed where he was when the witness saw him, he was perfectly safe; he was perfectly safe where he was paint-

ing as long as he stayed there; the tender obscured his view about sixty feet before he reached the plaintiff; engine was backing; the bell was ringing; that he was about 400 feet from the plaintiff when he first saw him; if there had been any danger, could have stopped; a man could stand between the target and the rail and let an engine pass, I have seen it done; no part of the engine struck him; it was the corner of the tender—what is called the pole socket.

The defendant introduced J. F. Boyd, who stated that he was painting targets on the morning of the injury, and that it required no skill to do so; witness was about 100 feet from the plaintiff; witness illustrated how he would paint a switch target without any danger to himself.

There were several other witnesses whose testimony tended to sustain the contentions of the plaintiff and the defendant.

The plaintiff offered in evidence section 299 of the ordinances of the city of Charlotte, prohibiting the running of trains at a greater rate of speed than four miles an hour in the corporate limits of the city. At the close of the plaintiff's testimony, the defendant made a motion to non-suit, which was denied. At the close of the whole evidence, the motion to non-suit was renewed and overruled, and the defendant excepted.

We concur with his Honor in his ruling upon this motion. There was evidence sufficient and competent to be submitted to the jury upon the issues raised by the pleadings. He submitted the following issues:

1. Was the plaintiff injured by the negligence of the defendant's lessee as alleged in his complaint?

2. Did the plaintiff by his own negligence contribute to his injury as alleged?

3. If the plaintiff's negligence contributed to his injury, could the defendant's lessee, notwithstanding the said negli-

gence of the plaintiff, have avoided the injury to him by the exercise of ordinary care?

4. What damage, if any, is the plaintiff entitled to recover?

The defendant requested the court to charge the jury that if they believd the evidence, the answer to the first issue must be "No." The instruction was refused and the defendant excepted. There was no error in refusing this instruction.

The court stated the contentions of the parties, charged the jury at length, explaining to them the law applicable to the testimony, and charged them that if they found that there was an ordinance in force in the city of Charlotte forbidding the running of an engine in the corporate limits at a speed greater than four miles an hour, and the engineer was running at a greater rate of speed than four miles an hour within the corporate limits in violation of the town ordinance, it would be evidence of negligence on the part of the defendant to be considered by them in connection with the other testimony. He also instructed them that it was the duty of the defendant's engineer to ring the bell while moving his engine in the yard, and to use all proper and reasonable efforts to avoid injuring the servants of the defendant engaged in work on the yard. He also instructed the jury in regard to the duty of the engineer to observe the rules laid down by the defendant. We think his Honor's instructions are fully sustained by the authorities prescribing the duty of the defendant under the circumstances testified to.

In *Erickson v. Railroad*, 41 Minn., 500; 5 L. R. A., 786, the plaintiff was lawfully at work as a section hand, in close proximity to the defendant's track, where he was liable to be stricken by passing trains. It was held that as the plaintiff occupied his position rightfully as an employee of the

defendant, he was not required to look out for passing engines, as in case of trespassers and licensees, and that the company owed him the duty of "active vigilance," in giving proper signals and warnings of the approach of engines and trains; and that the plaintiff had the right to rely on the continued performance of this duty without the necessity, while engrossed in his work, of keeping constant lookout for approaching trains.

In *Schulz v. Railroad,* 59 N. W., 192, the court held that, without regard to any custom or any rule of the company as to ringing the bell or giving other warnings, the defendant is required to give some signal of the approach of an engine, and that the failure to ring the bell or give warning was not a risk assumed by the plaintiff.

In *Kelly v. Railroad,* 8 S. W., 420, the plaintiff was an experienced track repairer and was fastening a fishplate to a T rail in the yard of the defendant at 12 o'clock in the day, and cars were frequently passing over the track where he was at work. A train was permitted to approach him without the ringing of the bell or other warning, and without having any one posted on the car to give proper signals. The plaintiff being absorbed in his work did not hear the noise of the train, until he looked up, but too late to avoid being struck by the car. It was held that the plaintiff was lawfully and rightfully on the track, and if no person was placed on the car to give warning, or if being placed there he failed to warn the plaintiff, and no other signal was given, then the company was liable. "This rule," says the court, "is humane, conservative of human life and consonant with public policy, and that, when the person is lawfully and rightfully on the track or in the way of passing trains and apparently unmindful of approaching trains, the duty to give signals is imperative."

In *Railroad v. Hinzie,* 18 S. W., 681, the plaintiff was

SMITH *v.* RAILWAY CO.

employed in painting a car on the defendant's track, and while engrossed in his work a switch engine, attached to cars, was moved on to this track without any signal or warning to the plaintiff, and he was injured. The court held that he was entitled to recover, and, after stating that it is the duty of the defendant to establish rules and regulations to warn workmen on its track, proceeded as follows: "It is true, also, that the cars would probably, at any moment be switched on to the side track on which he was at work; but this would not necessarily, or even probably, import that he knew that the appellant would neglect to give him adequate warning of their approach, and that it was hence unsafe for him to perform the work in obedience to his orders. The mere fact that he knew that cars would probably be switched in upon the side track would not preclude a recovery by him, unless he also knew that it was unsafe to continue his labor; and this was a question for the jury."

In *Felice v. Railroad,* 43 N. Y. Supp., 922, it is said: "It is the duty of the master to use reasonable care to provide for the servant, so far as the work in which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous, by reason of perils arising from the doing of other work pertaining to the master's business different from that in which the particular servant is engaged, to give him such warning of the additional dangers as will enable him, in the exercise of reasonable care, to avoid them or to guard himself against them."

In *Promer v. Railroad* (Wisc.), 63 N. W., 90; 48 Am. St. Rep., 905, the court used the following language: "But the employee does not assume the risk of those dangers which are known by, or can be obviated or avoided by, the exercise of reasonable care and caution on the part of the company. The company is bound to take reasonable care and caution

to protect those working in its yards from such dangers, and it would be liable for damages sustained by any employee in consequence of its neglect or failure to discharge its duty in that regard. The duty is one arising from the relation of master and servant, and the servant has a right to assume, until he has knowledge to the contrary, that the master has taken and will adopt such reasonable measures as are within his power to protect him against such dangers while engaged in his work. The master is required to furnish the servant with a safe and proper place in which to perform his work, and while requiring the performance of work by a servant at a place which may or has become dangerous, and such danger may be foreseen and guarded against by the exercise of reasonable care and prudence on the part of the master, it is his duty to exercise such care and adopt such precautions as will protect the servant from avoidable danger, that is to say, such as may be avoided by the exercise of reasonable care and caution on the part of the master."

The plaintiff swears that he knew the rules requiring the ringing of the bell and that he was relying on that for his protection; that it was impossible for him to do the work well and at the same time keep a constant lookout for the movements of the engine; that if he put his whole attention on the painting, he could not be on the lookout all the time. There was evidence proper to be submitted to the jury that the bell was not ringing and that the engine was moving at a dangerous rate of speed. We think there was ample evidence, if believed by the jury, to sustain their finding upon the first issue, and we find no error in the instruction to the jury as to the measure of duty which the defendant owed to the plaintiff.

The jury having found the second issue in favor of the defendant, it becomes unnecessary to examine the charge of the court in respect thereto.

His Honor instructed the jury that the burden was on the plaintiff upon the third issue to show that, notwithstanding his negligence the defendant could have avoided injuring him by the exercise of ordinary care, and if they found that the plaintiff had negligently placed himself in dangerous proximity to the defendant's track and he was engaged in his work with his head down and was unaware of the approach of the train, and if they further found that the defendant's rules required its agents in charge of its trains, whenever they saw a person in such position, to sound the alarm whistle when necessary, and if they further found that the defendant's employee saw, or by the exercise of reasonable care could have seen that the plaintiff was in a dangerous position in time to avoid injury, and ran the train on down the track without proper signal of the approach of the train or stopping it, and that this was the proximate cause of the plaintiff's injury, they should answer the third issue "Yes;" that the defendant contended that the plaintiff was not in a dangerous position until a second before the train struck him, and that after the defendant company discovered that he was in a dangerous position they did all they could to avoid the injury and that it was impossible for them to avoid it; that as soon as he placed himself in that dangerous position, warning was given and the brakes applied at the same instant he was struck; that if they found from the evidence that the plaintiff was in a place of safety up to the time he leaned over to get paint on his brush, and if they found that he did this, and it took him less than a second and that he was stricken instantly upon leaning over, they would answer this issue "No;" but it was the duty of the plaintiff to establish his contention as to this issue by a preponderance of the evidence.    There was no exception to this charge, and we think that there was evidence to be submitted to the jury to sustain that finding.    Upon a careful examination of the entire

record, we think that his Honor's instructions are sustained by both authority and reason. See also *McLamb v. Railroad,* 122 N. C., 875; *Andreson v. Railroad* (Utah), 30 Pac. Rep., 305; Beach on Cont. Neg. (Ed. 1899), Sec. 67.

Judgment Affirmed.

WALKER, J., having been of counsel did not sit on the hearing of this case.