SHERRILL v. RAILROAD.

(Filed December 12, 1905).

*Railroads — Crossings — Master and Servant — Employee Working Near Track—Negligence—Contributory Negligence.*

1. One who enters on a public railroad crossing is required to look and listen, and when he fails in this duty and is injured in consequence, the view being unobstructed, under ordinary conditions such person is guilty of contributory negligence.

2. Negligence having first been established, facts and attendant circumstances may so qualify the obligation to look and listen, as to require the question of contributory negligence to be submitted to the jury, and in some instances, the obligation to look and listen may be altogether removed.

3. The above principle, with its limitations, applies with peculiar force to those whose duties, by contract with the railroad, call them to work on or upon the tracks or frequently to cross the same.

4.  Where the testimony of the plaintiff tended to show that his duties
    by contract with the defendant railroad caused him to work
    almost on the track and frequently required him to be upon
    and across it, and that while so engaged he was run over by
    an engine of the defendant which had come upon him without
    any warning, and which warning was required both by the cus-
    tom and rules of the railroad, and that he had just looked and
    listened both ways, and the way then appeared clear, *held*, that a
    nonsuit was erroneous as the question of contributory negligence
    must be left to the jury to determine under proper instructions.

ACTION for personal injuries caused by alleged negligence
of defendant, heard by *Judge W. B. Councill* and a jury, at
May Term, 1905, of the Superior Court of CATAWBA. The
ordinary issues were raised by the pleadings.

There was evidence tending to show that the plaintiff was
at the time of the injury engaged in superintending the con-
struction of a union depot at Helena, Ga., for the defendant
and the Seaboard Air Line Railway Companies. The tracks
of the two railroads crossed each other at right angles and
the depot was being constructed in one of the angles and
within a few feet of the tracks, and within the yard limits of
the defendant at that point. The plaintiff's duties required
him to cross and recross the defendant's track at frequent
intervals in order to properly superintend the construction
of the work. The depot which was being built had two fronts,
one facing the track of the defendant, and the other the track
of the Seaboard.

The defendant's employees were accustomed to give warn-
ing of the approach of the trains at that point by sounding
the whistle and ringing the bell, and the rules of the com-
pany required that adequate warning should be given. On
the occasion when the plaintiff was injured, no warning of
any kind was given, and the plaintiff, in endeavoring to cross
the track, was struck by one of the defendant's trains and
severely injured. The plaintiff, who was the only witness
examined, speaking to the main features of the charge, testi-

SHERRILL *v.* RAILROAD.

fied as follows: "I was setting door and window frames. After I got them set, I stepped across the Southern and walked up and down to see if the frames were level. There was a belt over the doors and windows, running around the whole building, and the frames had to be on line at the top. I stepped across and walked up and down the platform to see if these frames were on a line; I had to get off to do this, and could not have done it properly any other way. The Seaboard train was standing across the Southern and I walked to the side of the depot on the Seaboard line, and cautioned the men about letting blocks of timber fall from the building. I pulled out a piece of scantling 4x6, that had fallen from the building, and walked back across the Southern on to the platform, and gave a few steps, and the Seaboard train was then pulling out. I made straight back to my men. I don't think I walked over 15 feet. I walked straight to the men across the road and the engine of the Southern caught me. I had no notice or knowledge of the presence of the engine until I was struck. I did not hear the ringing of the bell, nor a signal of any kind. It was not more than half a minute. I looked and saw the Seaboard train, just started, and was about stepping across the road. I don't think I walked more than 15 feet when the engine struck me. I cannot tell at what speed the engine was running; it was all done so quick I could not see. I was walking right fast. When I started down the Southern the last time, returning to my men, I looked back and the Seaboard was on the crossing, moving off. I looked both ways and there was nothing there. I looked both ways and did not hear anything. I heard nothing. I heard the rumbling of no car and no whistle. I was using every precaution I could."

On cross-examination he stated that when he started down the Southern track the last time, he was 10 or 12 feet from the Seaboard track, and looked both ways. He then walked nearly 30 feet before he undertook to cross, or something

like 20 feet, and did not look back again. He walked down the track and stepped over, and that if he had looked just as he stepped on the track, he could have seen the train which struck him; that he was not struck just as he stepped on the track, but just as he was making the last step off the track. At the close of the testimony, on motion, the court directed a nonsuit and the plaintiff excepted and appealed.

*W. C. Feimster* and *M. H. Yount* for the plaintiff.
*S. J. Ervin* for the defendant.

HOKE, J., after stating the case: We have held in *Cooper v. Railroad,* at this term, that one who enters on a public railroad crossing is required to look and listen, and when he fails in this duty and is injured in consequence, the view being unobstructed, under all ordinary conditions such person is guilty of contributory negligence. It is further held that negligence having been first established, facts and attendant circumstances may so qualify this obligation to look and listen, as to require the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed.

The principle, with its limitations, applies, we think, with peculiar force to those persons whose duties, by contract relation with the railroad company, call them to work on or upon the railroad tracks, or frequently to cross the same, and is sustained by abundant authority. *Cooper's case, supra; Erickson v. Railroad,* 41 Minn., 500; Shearman & Redf. on Neg., sec. 476; *Laverentz v. Railroad,* 56 Iowa, 689; *Nixon v. Railroad,* 84 Iowa, 331; *Rodrian v. Railroad,* 125 N. Y., 526; *Jennings v. Railroad,* 112 Mo., 268.

In Shearman & Redfield, *supra,* it is said: "A traveler must look in every direction * * * but circumstances may excuse him from looking more than once. There is no arbitrary rule requiring him to look constantly."

In *Rodrian's case, supra, Agnew, J.,* said (quoted also in *Cooper's case, supra*): "But where one has looked for an approaching train it would not necessarily follow as a rule of law that he was remediless because he did not look at the precise place and time, when and where looking would have been of the most advantage."

The facts in *Jenning's case* are very similar to the one before us so far as the obligation to look and listen is concerned. As pertinent to the question they are stated thus: "Plaintiff, before passing these cars, looked west along the street he was traveling, and saw it was open. He could not see south on the second sidetrack because of cars on the first. He looked in that direction, however, saw no one on top of any car, and heard no engine bell ringing, though he saw the smoke from an engine. He crossed over the first track, upon which the cars were standing, and while looking north at the approaching train on the main track, stepped upon the sidetrack without again looking south, and was immediately struck, knocked down and run over by some freight cars, five in number, which had been kicked by an engine from a point 300 or 400 feet south of Lesperance street." On these facts, there was verdict and judgment for the plaintiff, and in affirming the judgment the court held that "the rule that a person who goes on a railroad track or purposes crossing it, must use his eyes and ears to avoid injury, and if he neglects to do so he cannot recover, notwithstanding the negligence of the company, is not of universal application, but has exceptions under exceptional circumstances, and the facts of this case make an exception to the rule."

Applying these decisions to the facts testified to by the plaintiff, we hold there was error in directing a nonsuit. The plaintiff's duties by contract with the company (whether through himself or under his employer, who was a contractor with the company, makes no difference) caused him to work almost on the track, and frequently required him then and

there to be upon and across it. While so engaged, he was run over by an engine of the defendant company, which had come upon him without any warning, and which warning was required both by the custom and rules of the company. More than that, he had just looked and listened both ways, not at the precise time when he started to cross the track, but only several seconds before, and the way then appeared clear. He says half a minute, but, as a matter of fact, you could walk the distance, he says he went, and at the rate he says he was mc ving, in five or six seconds. To hold him to a constant looking would disqualify him from doing his work, and as a matter of law it is not required of him.

If the negligence of the defendant is properly established, we are of opinion that on the evidence, set forth in this case, the question of contributory negligence must be left to the jury to determine under proper instructions, and on the facts as they shall find them. The case, we think, comes within the principles so clearly stated in *Smith v. Railroad,* 132 N. C., 825. There is error and a new trial is awarded.

New Trial.