The plaintiff was a conductor upon a freight train of the Southern Railway Company, running between Greenville and Charlotte. This freight train carried passengers in the caboose car, and on the occasion in question a passenger boarded the train at Belmont. He did not inform any one where he was going when he got on the train, but when the conductor collected his fare he found that the passenger desired to alight at Juneau, which is a flag station. It was the duty of the engineer when approaching these flag stations to blow the station signal, and then it was the duty of the engineer to watch for a signal from the conductor as to whether the train was to be stopped at the flag station. There was evidence tending to show that the engineer failed (428) to blow the station signal, and the conductor, perceiving that the engineer was not blowing the station signal, attempted to give the engineer a signal, first from the window of the caboose. Failing in this, he got on top of the freight car in front of the caboose, and then again attempted to signal the engineer, but not being able to attract his attention, the conductor attempted to go forward and turn on the air brakes, which was a means of stopping the train. He discovered, however, that there were no air-brakes close enough for him to reach, and *Page 313 
he started back towards the caboose car, still signaling the engineer. About this time the engineer seems to have discovered the signal, and he then stopped the train in such a way as to cause (as plaintiff alleges) an unnecessary and unusual shock, and this threw the plaintiff from the top of the box-car down between the box-car and the caboose car, and in his fall he grabbed at a brake wheel which broke with him, and he then fell between the cars and had his leg crushed to pieces, and his right hand mangled so that he lost three fingers, and sustained other severe bruises and cuts on his body.
By the uncontradicted evidence, the brake wheel in question was in a defective condition, having lost two of its spokes, and this defective condition had been reported two or three times to the car inspector, but the defendant had failed to repair the wheel.
The court instructed the jury: "You will understand that the plaintiff contends that there was a series of negligent acts of which the Southern Railway Company was guilty, and which resulted in the injuries which he sustained." And after enumerating these several alleged acts of negligence, the court again says: "He contends that the series of negligent acts complained of proximately caused the injuries which he says he received." In other words, the plaintiff (429) took upon himself the burden of showing that each one of these acts in this series of acts was negligent.
The court on the first and second issues charged: "If the jury find from the evidence that, as the train approached the station, Juneau, the plaintiff was sitting in the cupola of the caboose, and the conductor attempted to signal the engineer from the window of the cupola of the caboose, and failed, and then went out on the top of the caboose and crossed over to a box car to signal the engineer, and did signal the engineer to stop, then it was the duty of the engineer to stop his train at Juneau, in obedience to the order; and if the jury find from the evidence that the engineer, acting in obedience to the signal of the conductor, applied the brakes to the train in the usual and customary manner, and if the jury find from the evidence that the train was going up a grade, and the application of the brakes and the train going up the grade caused the slack to run out, and this caused a jar or jolt, which threw the conductor off of his feet, and he fell between the cars, this would not be negligence, and you will answer the first issue, No."
From the foregoing charge it is clear that the jury found that the train was not stopped by the engineer in the "usual and customary *Page 314 
manner" and with the usual and ordinary jolts, because, under the instruction quoted above, if the jury had found that the engineer had stopped the train in the usual and ordinary manner, without negligence on his part, then the jury would have answered the first issue No. In the light of this charge, and the verdict of the jury upon the first issue, it may be taken as a fact, which is established in this case without objection or exception, that the engineer on the occasion in question stopped the train with unusual and unnecessary shock, and that there was negligence on the part of the railway company in this respect.
On the first and second issues the court charged the jury, (430) further, as follows: "When a person enters into the service of a railroad company he assumes all of the ordinary risks of his employment, and when a person becomes the conductor of a freight train he assumes all the ordinary risks arising from the jolts and jars which are incident to the handling of freight trains. The court charges you, as a matter of law, that if the jury find from the evidence that the plaintiff had signaled the engineer to stop his train, it was his (the engineer's) duty to stop his train, and the fact that the engineer proceeded to stop his train in obedience to the orders of the conductor would not be negligence, unless it was done in an extraordinary and unusual manner. The court further charges you, as a matter of law, that if the jury find from the evidence that the conductor had signaled the engineer to stop his train, it was the duty of the conductor, who was on top of the train, to be careful, and to take such steps and do all things which a man of ordinary prudence would ordinarily do to protect himself from any shock or jar or jolt which might be expected to occur, and if he did not, then the negligence would not be that of defendant's lessee, but the negligence of the plaintiff himself, and you will answer the first issue No, and the second issue, Yes.
Here again the jury were distinctly instructed that they should answer the first issue No, unless they found that the train was stopped "in an extraordinary and unusual manner," and likewise the jury were instructed to find that the plaintiff was guilty of contributory negligence unless it was shown that he took all ordinary precautions to protect himself against any shock or jolt caused by the stopping. Under this instruction the jury have found that the plaintiff himself was not guilty of any contributory negligence in this respect.
Under the charge of the court, as quoted above, the jury found two facts which are established in the case without objection or exception, viz.: (1) That the engineer stopped the train in a manner to (431) cause an unusual and unnecessary shock, and (2) That the plaintiff himself was not guilty of any contributory negligence. With these two facts established, without objection or exception, then *Page 315 
all the other objections and exceptions become harmless to the defendant. For instance, as the jury have found that the railway company was guilty of negligence in causing the plaintiff to be thrown from the top of the box car by the unusual and unnecessary shock, and that this occurred without his negligence, then it follows that the plaintiff was entitled to recover for the damages which he sustained; and the question as to whether the brake wheel was defective, or whether that was an additional cause for his injury, was, in a sense, immaterial, because, even if the brake wheel had not been defective, the plaintiff still would have been entitled to recover what damages be sustained; and if the defendant was guilty of negligence in causing a shock which threw the plaintiff from the top of the box car, it could not save itself by showing that it was not guilty of negligence in respect to the brake wheel. For putting on plaintiff the burden of proving the brake wheel defective the defendant cannot complain. It is not necessary to consider the other exceptions, in this view of the case.
No error.