His Honor submitted issues to the jury, presenting (1) the negligence of the defendants; (2) the contributory negligence of the plaintiff's intestate; (3) the last clear chance; (4) damages. The jury answered all the issues in favor of the plaintiff, and assessed damages in the sum of $6,000. The case was heard entirely upon the evidence of witnesses offered by the plaintiff. The defendant offered no testimony, and moved for judgment of nonsuit at the close of the evidence, which motion was disallowed, and defendant excepted. This exception, together with exception taken to the adverse rulings of his Honor in admitting certain evidence of the plaintiff, and exceptions to his Honor's charge, present the questions for consideration.
The evidence offered shows the following facts: Stanly Farris was killed on 29 May, 1907, at about 12 o'clock of the day, by being run over by four gondola cars moving on a track in the yard of (486) the defendant, Southern Railway Company, at Asheville. The intestate was an employee of the defendant company and had been in its service for about eight months prior to his death. The defendant company was doing on its yards at Asheville a large amount of work, rearranging its tracks, widening its yard, increasing the number of tracks and building a stock pen. The intestate had been constantly and regularly at work for defendant company, engaged in doing different jobs, as a water boy, carrying water for the other employes, etc., and for a week prior to his death had been assisting in building the stock pens. The stock pens were on the south side of the yards; the intestate lived on the north side of the yards. On the south side the embankment was about 3 or 31/2 feet high; on the north side, about 25 feet, except at a depression. The employees of the defendant company, numbering from 100 to 150, some of whom worked on the yards, others elsewhere, together with other laborers working for a tannery on the south of defendant company's yard, crossed the yards to and from the depression in the embankment on the north side to and from the south side, from two to three times daily. A whistle, sounded at the roundhouse of the defendant company, gave the signal for its employees to stop at the noon hour for dinner. The place, above described, where the large number of employees crossed the yards, was about three-fourths of a mile to a *Page 470 
street crossing on the east and about 700 yards to a street crossing on the west, and from bank to bank was about 100 yards. This place contained eighteen or twenty tracks. When Stanly Farris, the intestate, started to cross the yards, on 29 May, 1907, at 12 o'clock of the day, there were many cars standing on the tracks to the east of him about 30 to 35 yards. He crossed the first and second tracks in safety and was walking down the space, from 6 to 8 feet wide, between these tracks. He was walking westward, and had gone a few steps, when an engine moving on the third track, from the south, at from 35 to 40 miles an hour, passed him, blowing off his hat, which fell on the second track, and as he stooped to pick it up he was struck, run over and killed by the four gondola cars loaded with coal. The defendant company, through the codefendants, Smith, its conductor, and Mooneyham, its engineer, had made what was called a "flying switch," and four coal cars were sent westward on the second track and were moving at the rate of eight or ten miles an hour, and the engine took the third track. The switch at which the engine was separated from the coal cars was 25 or 30 yards east of the intestate. No bell was rung, whistle blown or other signal (487) given by the rapidly moving engine. The coal cars were moving noiselessly, with no watchman on any of the four cars, and no warning given to intestate of their approach. The intestate was about seventeen years of age, sober, hard-working, in good health, saving of his wages, and was at the time earning $1.35 per day.
From the judgment entered on the verdict the defendants appealed to this Court.
After stating the case: The question first presented for our consideration is the negligence of the defendants. If the evidence does not prove or tend to prove a breach of duty by the defendants towards the plaintiff's intestate, and that such breach of duty resulted proximately in the injury complained of, then it must follow that the motion to nonsuit ought to have been allowed for failure of proof on the first issue.
In Wilson v. R. R., 142 N.C. 333, Mr. Justice Brown, speaking for this Court, said: "The attempt to make a running switch across a much-frequented street is not only a negligent but a most dangerous and unwarranted operation, and has been so held by a number of courts. Bradley v. R. R.,126 N.C. 735; Brown v. R. R., 32 N.Y. 597; Falener v. R. R., 68 Miss. 355;R. R. v. Summers, 68 Miss. 566; French v. R. R., 116 Mass. 537; R.R. v. Garvey, 58 Ill. 83; R. R. v. Baches, 55 Ill. 379. *Page 471 
It matters not whether the purpose was to `shunt' the car off on a switch or to give it force enough to roll along on the same track; it is negligence to permit a car to be `cut loose' and roll, uncontrolled by any one, across a much-used crossing." In Allen v. R. R., 145 N.C. 214, the same learned justice said: "The word `kicking' seems to be used in railroad parlance as synonymous with making a `flying switch.' This Court has never held such operations to be per se negligence in respect of the employees performing them. It is the attempt to make a running switch when the detached car has no brakeman on it and is under no control that is declared to be negligence, because highly dangerous. Wilson v.R. R., 142 N.C. 336, and cases there cited." Vaden v. R. R.,150 N.C. 700. In Bradley v. R. R., 126 N.C. 735, this Court held. "A crossing which the public have been habitually permitted to use is treated as a public highway crossing. Russell v. R. R., 118 N.C. 1098." In 3 Elliott on R. R. (2 Ed.), sec. 1265g, this learned writer says: "The practice of making running or flying switches is inherently (488) dangerous, and is considered by the courts in numerous decisions. The courts have not hesitated to hold railroad companies liable for injuries to trespassers on the track, thus inflicted, on the ground of negligence. The case of this negligence seems specially plain where the cars are sent in swift motion, with no one at the brakes, upon switch tracks commonly used by persons for footpaths and crossings, without objection from the company, though not a public crossing. It would seem a duty owed by the railroad company, even to trespassers, to station lookouts in such positions on the moving cars, that they can watch ahead of them and warn persons thereon of their danger." Conley v. R. R., 89 N.Y. 402; R.R. v. Crosnoe, 72 Tex. 79. In Vaden v. R. R., 150 N.C. 700, Mr. JusticeBrown, speaking for the Court, in stating the facts of that case, said: "The evidence for the plaintiff tends to prove that he was killed aboutthirty feet from where Tomlinson Street crosses the tracks. The evidence of the defendant locates him farther from the crossing. All the evidence shows that these switch tracks were situated in a populous part of the city and adjacent to and close by factories, where many people of all ages were employed. At the time the intestate was killed, the factory had just closed for the day and the employees were filling the streets and crossings. The court permitted evidence to the effect that there is much passing by school children, factory hands and citizens generally along Tomlinson Street and in the vicinity of the accident, to which defendant excepted. We see no objection to this evidence. It tended to establish conditions that should have put the defendant on notice as to the necessity of caution in moving its cars at that point. R. R. v. Smith, 18 L.R.A., 66."
In the present case the intestate of plaintiff occupied toward the *Page 472 
defendant the relation of employee, and of this relationship the law certainly fixes the company with knowledge. He was not a trespasser in crossing its tracks. He, together with a large number of other employees of defendant company (among them, others, not employees, were intermingled), some of whom worked on the yard, others on the stock pens, had been accustomed for about six months to cross the yards at or about the place where plaintiff's intestate was killed, and at least one of the hours during the day, when they crossed the yard, was indicated by a whistle from the roundhouse of defendant company. Crossing at this point enabled the employees to reach their homes and boarding places more quickly and to return to their work more promptly. A (489) custom of its own employees continuing for six months, and observed by it without protest or objection from the defendant company, we must hold to have continued long enough to fix the defendant with knowledge of its existence. In addition, the defendants, in their joint answer, admit that the intestate of plaintiff was accustomed, in going in a direct course to and from his place of employment to his boarding house, to pass through the yards of the defendant company and cross its tracks. In Bordeaux v. R. R., 150 N.C. 528, it was held "undoubtedly culpable negligence" to "kick" a car on a track in a shifting yard, resulting in injury to plaintiff, who was at work on a car on that track, but who failed to observe a rule of the company by placing a signal flag on the car as notice to engineers operating the shifting engine, there being evidence that the rule was much violated on "short jobs," to the knowledge of the superintendent and engineers on the yard, and that the employees of the kicking engine saw repairers at work on the car. Under the authorities cited, we think the evidence clearly sufficient to sustain the finding of defendant's negligence by the jury in response to the first issue, and that the negligent act of the defendants continued up to the collision of the cars with plaintiff's intestate, and without which the accident would not have happened.
We proceed next to the consideration of the motion to nonsuit, as it applies to the second issue — the contributory negligence of the plaintiff's intestate. Upon this issue his Honor charged the jury: "It is the duty of persons going on the track of a railroad company to stop and look and listen for any train that may be moving or lying on the track of such company and on its yards, where there are several tracks used for shifting cars, to be continually alert and on the lookout for a moving train or cars; and if a person fails in this duty, and in consequence of such failure is injured by moving cars, the person would be guilty of contributory negligence." While the burden of this issue rested on the defendants, the burden of duty rested upon the intestate. The law does not presume contributory negligence; it must be alleged and proven; *Page 473 
the defendant must show such facts — either omissions to observe such cautions or the doing of such acts — from which only one inference, to wit, the plaintiff's negligence, can be drawn by men of ordinary reason and intelligence. Of the conduct and acts of the intestate the evidence discloses these facts: When he entered upon the yard he saw an engine and cars moving east of him; he crossed the first and second tracks, moving somewhat to the northwest; he had taken a few steps between the second and third tracks and was about to cross the third track, when the engine sped by him at the rate of thirty or forty miles (490) an hour; the draught caused by the rapidly moving engine blew off his hat, blowing it on the second track, which he had just crossed in safety; as he stooped to catch his hat he was struck by the coal cars and killed. The cars were moving at the rate of eight or ten miles an hour. The switch was 25 to 30 steps east of intestate. To make the flying or running switch with engine moving in front, it is, of course, necessary that the start must be made sufficiently beyond the switch to enable the engine to acquire such speed as to be uncoupled before reaching the switch so far in advance of the cars as to permit the switch to be thrown and to send the detached cars a desired distance on the track. The engine had acquired the speed of thirty-five or forty miles per hour, and must have been making the noise usual to engines moving at such speed. According to one of the eye-witnesses, the detached cars were moving noiselessly. It can easily be inferred that, in the close presence to the rapidly moving engine, the intestate could not have heard any noise from the moving cars. He had just crossed in safety the track upon which these cars were noiselessly moving, unguarded by any person stationed on them to warn him of their approach. His position and purpose were known to the defendants. The danger of a misstep or of deviating from an exactly straight line was obvious to the defendant engineer. The rapidly moving engine, passing intestate, was naturally calculated to make him draw away from it. The natural impulse was to grab at his hat and to stoop to pick it up. A watchful brakeman on the cars, "keeping a continuous lookout," would, assuredly, seeing his position of peril, have warned the intestate, and by such timely warning a human life would have been saved. Sawyer v. R. R., 145 N.C. 24. There was however, no brakeman or guard on these cars; no warning was given of their noiseless approach, and the only negligent act of the intestate which, the defendants allege, contributed to the intestate's death and was its proximate cause, was his yielding, under the circumstances described, to a natural impulse in stooping to grab his hat. It is not apparent that if intestate had turned to look behind to see if danger approached, he would not have been stricken, as the space between the cars passing on the adjacent track did not exceed two feet. While we are in nowise *Page 474 
inclined to relieve the person crossing the tracks of a railroad from the imperative duty of observing the measure of caution so well established for his safety by the well-considered decisions of this and other courts, yet "it cannot always be said that he is guilty of contributory negligence, as a matter of law, because he did not continue to (491) look and listen at all times continuously for approaching trains, where he was misled by the company or his attention was rightfully directed to something else as well" (3 Elliott on Railroads, sec. 1166a), or that he failed to look in opposite directions, at the same moment of time. As is said by Mr. Justice Hoke, in Sherrill v. R. R., 140 N.C. 252, "It is further held that, negligence having been first established, facts and attendant circumstances may so qualify this obligation to look and listen as to require the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed." Inman v. R. R., 150 N.C. 123; Morrowv. R. R., 146 N.C. 14.
It must not be overlooked, in reaching a conclusion in this case, that the act which occasioned plaintiff's intestate to be killed was immediately caused by the rapidly moving engine, passing within two feet of him, at a time and place where defendants admit that they knew the intestate would be crossing, and at a time and place where the uncontradicted evidence shows that between 100 and 150 employees of defendant company and others were accustomed to cross the tracks of the yard. We are therefore of the opinion that the motion to nonsuit, upon the evidence bearing on the second issue, ought not to have been allowed, and that his Honor did not err in submitting this issue to the jury.
The defendants objected to his Honor's submitting the third issue — that issue presenting the "last clear chance." While this issue has become immaterial, in view of the finding of the jury on the first and second issues, we think it was proper for his Honor to have submitted it. If the jury had found with defendants on the second issue, having found the first issue with plaintiff, the ultimate liability of defendants would have been determined by their finding on the third issue. In the presence of the concurring negligence of a plaintiff and a defendant, it is a generally accepted doctrine, and well settled in this State, that the ultimate liability must depend upon whether the defendant could at the time have avoided the injury by the exercise of reasonable care, under the attendant circumstances. Ray v. R. R., 141 N.C. 84; Reid v. R. R., 140 N.C. 146;Lassiter v. R. R., 133 N.C. 244; Arrowood v. R. R., 126 N.C. 629;Pickett v. R. R., 117 N.C. 616.
During the trial, the plaintiff, over defendant's objection, was permitted to offer evidence tending to show that the defendant company could have provided a safe way of crossing by building at small *Page 475 
cost an overhead bridge. This evidence was directed solely to the (492) first issue; and while we are of the opinion that neither the defendant company nor its codefendants were under the duty, under the facts of this case, to erect such overhead walkway, or bridge, yet, as we have concluded that the uncontradicted testimony, independent of this evidence, was plenary of the defendant's negligence, and his Honor, upon such other testimony, would have been justified in instructing the jury to answer the first issue against the defendants, subject only to their belief in the credibility of the witnesses, we cannot see, under such circumstances, that the admission of such evidence was reversible error. This evidence could in no way have influenced the finding of the jury to the second, third or fourth issues. The defendants, at the trial, offered no evidence at all, and no evidence in any way to relieve the inference of their negligence, to be drawn from the other evidence, uncontra-directed in any particular by them. The testimony objected to suggested a cause of damage too remote, and for this reason we cannot see that its admission prejudiced the defendants with a jury of the intelligence we must assume our juries to possess. If we felt constrained to grant a new trial to the defendants for the admission of this evidence, we would feel constrained to restrict it to the first issue only. Bull v. R. R., 149 N.C. 427; Reevesv. R. R., 149 N.C. 244; Spence v. Canal Co., 150 N.C. 160; Gaither v.Carpenter, 143 N.C. 240; Smith v. Lumber Co., 142 N.C. 26; Hosiery Co.v. Cotton Mills, 140 N.C. 452; Cherry v. Canal Co., 140 N.C. 422;Jennings v. Hinton, 128 N.C. 214; Clark v. Moore, 126 N.C. 1. As we have reached the conclusion that no reversible error was committed in the trial of this action, the judgment of the court is affirmed.
No error.
Cited: Snipes v. Mfg. Co., 152 N.C. 45; House v. R. R., ibid., 399;Heilig v. R. R., ibid., 471; Edge v. R. R., 153 N.C. 215; Wolfe v. R. R.,154 N.C. 576; Boney v. R. R., 155 N.C. 108; Zachary v. R. R., 156 N.C. 503;Johnson v. R. R., 163 N.C. 445, 447; Talley v. R. R., ibid., 571, 579; Kenney v. R. R., 165 N.C. 103; Shepard v. R. R., 166 N.C. 545;Gray v. R. R., 167 N.C. 437; Buchanan v. Lumber Co., 168 N.C. 47;Penninger v. R. R., 170 N.C. 475; Lutterloh v. R. R., 172 N.C. 118;McManus v. R. R., 174 N.C. 737. *Page 476