After stating the case: In this day and time and under our present system, it seems to be generally conceded that the decrees of probate courts, when acting within the scope of their powers, should be considered and dealt with as orders and decrees of courts of general jurisdiction, and where jurisdiction over the subject-matter of inquiry *Page 114 
has been properly acquired that these orders and decrees are not as a rule subject to collateral attack. The facts very generally recognized as jurisdictional are stated, in Revisal 16, to be that there must be a decedent; that he died domiciled in the county of the clerk where application is made, or that, having his domicile out of this State, he died out of the State, leaving assets in such county or assets have thereafter come into such county; having his domicile out of the (140) State, he died in the county of such clerk, leaving assets anywhere in the State or assets have thereafter come into the State, and where, on application for letters of administration, these facts appear of record, the question of the qualifications of the court's appointee can not be collaterally assailed. That is one of the very questions referred to him for decision. But if a person has been selected contrary to the prevailing rules of law, the error must be corrected by proceedings instituted directly for the purpose. Hall v. R. R., 146 N.C. 345;Springer v. Shavender, 118 N.C. 33; Lyle v. Siler, 103 N.C. 261;Moore v. Eure, 101 N.C. 11; London v. R. R., 88 N.C. 585, and generally on the subject see Dobler v. Strobler, 9 N. Dakota, 104, with notes by the editor in 81 Amer. St., 530-535; Crosswell on Exrs., 19 etseq. In the present case the deceased was killed in Greensboro, N.C. where he resided at the time and had his domicile. The cause of action is of itself assets. Vance v. R. R., 138 N.C. 460. The clerk, therefore, had full jurisdiction and the letters of administration are not open to collateral attack in the present suit. The question, however, can hardly be said to arise in this case, for, under a correct charge, the jury have determined that the plaintiff was a resident of the State at the time of the appointment, and the evidence offered by plaintiff, and objected to by defendant, was clearly competent and directly relevant to the issue. Watson v. R. R., 152 N.C. 215. Approaching then the principal question presented, this Court, in Cooper v. R. R., 140 N.C. 209221, endeavored to lay down certain general rules, applicable to injuries at railroad crossings as fair deductions from the cases considered, as follows:
"(1) That a traveler on the highway, before crossing a railroad track, as a general rule, is required to look and listen to ascertain whether a train is approaching; and the mere omission of the trainmen to give the ordinary or statutory signals will not relieve him of this duty.
"(2) That where the view is unobstructed, a traveler, who attempts to cross a railroad track under ordinary and usual conditions without first looking, when by doing so he could note the approach of a (141) train in time to save himself by reasonable effort, is guilty of contributory negligence. *Page 115 
"(3) That where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence.
"(4) There may be certain qualifying facts and conditions which so complicate the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by watchman, and the traveler enters on the crossing reasonably relying upon the assurance of safety."
And in another case, at same term, Sherrill v. R. R., 140 N.C. 252, applying the general rule contained in the fourth clause, it was held, among other things: "Negligence having first been established, facts and attendant circumstances may so qualify the obligation to look and listen as to require the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed." And the facts relevant are very correctly embodied in the fourth head note of the case as follows: "Where the testimony of the plaintiff tended to show that his duties by contract with the defendant railroad caused him to work almost on the track and frequently required him to be upon and across it, and that while so engaged he was run over by an engine of the defendant which had come upon him without any warning, and which warning was required both by the custom and rules of the railroad, and that he had just looked and listened both ways, and the way then appeared clear: Held, that a nonsuit was erroneous, as the question of contributory negligence must be left to the jury to determine under proper instructions." And the Court, in its opinion, said, quoting with approval from Rodrian'scase, 125 N.Y. 526: "But where one has looked for an approaching train it would not necessarily follow as a rule of law that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage." (142) Again, in Morrow v. R. R., 146 N.C. 14, the same principle was illustrated and applied, the Court holding that: "It was not error in the court below, upon the question of contributory negligence, to refuse a motion as of nonsuit at the close of the evidence which tended to show that, after waiting at the railroad crossing on a public highway for about five minutes for defendant's freight train to pass, the plaintiff immediately proceeded to cross and was struck by a passenger train of defendant going in an opposite direction to the freight; that he *Page 116 
did not know of the approach of the passenger train, though he had looked and listened; that the noise and smoke of the freight train, and it being a dark and cloudy evening, about 5 o'clock, with a fog arising from the ground, covered with sleet, and there being no lights, prevented him from so doing." And like ruling was made in Inman v. R. R., 149 N.C. 123, the revelant facts and decision in the case being stated as follows:
"1. While a person who had voluntarily gone on a railroad track, where the view was unobstructed, and failed to look and listen, can not recover damages for an injury which would have been avoided by his having done so, when the view is obstructed or other existing facts tend to complicate the matter, the question of contributory negligence may become one for the jury.
"2. Where there is evidence tending to show that a railroad company has several tracks in a city over which the plaintiff usually went in going to and from his work, and that the view of the track was obstructed, and plaintiff, having listened for warnings he had a right to expect, but which were not given, stepped upon the track and was injured by defendant's train running at a much greater speed than allowed by the town ordinance, and which was unsafe at the place indicated, the question of contributory negligence is properly submitted to the jury.
"3. When there is a town ordinance preventing the blowing of locomotive whistles within its limits, the bell should be rung continuously where there are numerous tracks and the conditions and surroundings (143) render the running of trains continuously dangerous to pedestrians."
The same position has been reaffirmed and applied in Wolfe v. R. R.,154 N.C. 569, where a watchman at a crossing was run on and injured by an engine which gave no signal of its approach, and when the watchman crossing the track in the discharge of his duty was engaged at the time in the effort to prevent a traveler from entering on the crossing under circumstances threatening danger. An application of these authorities and the principle upon which they rest to the facts presented fully support the ruling of his Honor below in submitting the question of contributory negligence to the jury. There was evidence on the part of plaintiff tending to show that at the precise time of the injury the plaintiff was standing on the main track for trains going north while a long freight train of defendant company was on the crossing moving south on the main track just ahead. A curve in the track, just below, shut off the view to some extent. The noise of the passing train naturally interfered with his hearing when he was run over and killed by the third or fourth section of a fast freight *Page 117 
train carrying fruit to the northern markets. There was evidence also on part of plaintiff to the effect that this train was running at a greater rate of speed than allowed by the city ordinance, and that no signals of its approach were given except the warning emergency blow when in twenty-five steps of intestate, and an ordinance of the city was also in evidence which prohibited this train from entering on the crossing at all till the freight train on the other track had crossed. In Inman v. R. R.,supra, and in Norton's case, the existence of a city ordinance, directly bearing on the occurrence, was allowed much weight, the principle being stated in Norton's case as follows: "A city ordinance regulating the rate of speed of a railway train is presumably passed for the protection of the people, and when within the scope of the city charter has the force and effect of law, and a citizen has the right to expect that it will be respected and obeyed by the railroad corporation."
Under the circumstances, as stated, or evidence tending to establish them, the court, imposing on the intestate the duty of looking and listening for the approach of trains, and being careful for (144) his own safety, properly submitted the question of contributory negligence to the jury, and there is no error in the charge giving the defendant any just ground of complaint. We have quoted from our decisions bearing on the question more at length by reason of a suggestion in argument, at the present term, that they had been modified to some extent by later decisions of the Court, notably in Mitchell v.R. R., 153 N.C. 116, and Coleman v. R. R., 153 N.C. 322, but there is no conflict in the cases when properly understood, and as applied to the facts existent in each nor any change in the controlling principle. Adverting again to the third rule deduced from the authorities in Cooper v. R. R., 140 N.C. 209: "That where the view is obstructed, a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter upon a public crossing because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence." The same was applied in Inman's case, where a pedestrian, endeavoring to pass over a public crossing and having his view obstructed, stopped and listened for the accustomed signals, and hearing none he stepped from behind the car on to the track and was run over and struck by an engine which approached without any warning and at a greater rate of speed than allowed by the ordinance. There were "two steps" for him to walk after he came into view of the track, but the case was submitted to the jury, and in Norton v. R. R., 122 N.C. 911, the fact appeared that the claimant had his view obstructed, had listened for signals and was misled to his injury by the failure *Page 118 
of defendant to give same. It may be well to note that these claimants were not relieved of the duty of properly caring for their own safety as a matter of law, but it was held only that the facts and circumstances attendant on the occurrence so qualified the obligation that the question of their conduct and its effect should be submitted to the jury. In Coleman's case the plaintiff testified, it is true, that he had both looked and listened, but he also stated that he had done this some distance back from the crossing where his view was obstructed by houses, and that he afterwards, in daylight, drove in a buggy "with (145) curtains buttoned down both sides and back across an open space of sixty-five feet, affording full opportunity to see down the track the way the train came for three-fourths of a mile and without any effort to further look or listen." There was nothing here to qualify his obligation to care for his own safety, and recovery was denied. InMitchell v. R. R., 153 N.C. 116, a deaf and dumb negro, familiar with the schedule of the trains and a frequenter of the train yards, walking towards the crossing just at the time when a train was scheduled to arrive, stopped where a box-car obstructed his view and then, with eleven feet of clear space, walked across the track without looking just as a fast train approached and was struck and permanently injured. There was no evidence that plaintiff had listened for signals, and hearing none was induced to venture, on the track for that reason, as inInman v. R. R., 149 N.C. 123, and in Norton's case. There was nothing shown to distract his attention. The fact that he was deaf should have quickened his obligation to look more carefully, as held inFoy v. Winston, 126 N.C. 381. Nothing appeared, therefore, to qualify the duty upon him to care for his own safety, and recovery in that case was also denied. As heretofore stated, on the precise facts existent in each case, our decisions are in accord on the question presented, and when properly applied sustain the trial judge in submitting the question of contributory negligence to the jury. There is
No error.
Cited: Batchelor v. Overton, 158 N.C. 398; Shepard v. R. R.,166 N.C. 545; Davidson v. R. R., 170 N.C. 284; Penninger v. R. R., ibid., 475; Lutterloh v. R. R., 172 N.C. 118; Starnes v. Thompson, 173 N.C. 472. *Page 119