W. G. PENNINGER v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 15 December, 1915.)

**Negligence — Contributory Negligence — Railroads—Crossings—Trials—Evidence—Questions for Jury.**

In an action to recover damages for a personal injury inflicted by a passing train of defendant railroad company, as the plaintiff was crossing the defendant's track on foot, there was evidence tending to show, and *per contra,* that the place was a much-used public crossing; that the train was moving from the east at an unusual and improper speed and without giving signals or other proper warnings; that the plaintiff had stopped, looked and listened before entering upon the track; that towards the east there was a pile of cross-ties extending 75 feet from the track, and a traction engine obstructing the view, and while the plaintiff was looking for a train which was expected from the west, the train from the east ran upon him unexpectedly, and as he heard the wheels of the approaching train he sprang to escape from the track, but his foot caught, causing him to make two or three hard jerks before he could free himself, preventing him from doing so in time: *Held,* the case was properly left to the determination of the jury upon the issue of contributory negligence.

APPEAL by defendant from *Lane, J.,* at April Term, 1915, of MECKLENBURG.

Civil action. The action was to recover damages for injuries caused by the alleged negligence of defendant company. It was alleged, and there was evidence on the part of plaintiff tending to show that, on or about 12 March, 1914, while plaintiff was endeavoring to cross defendant's track at a public crossing, in the suburban village of North Tryon, Charlotte, N. C., he was run on and severely injured by one of

defendant's trains coming from the east; that the train was moving at an unusual and improper rate of speed and ran on crossing without giving the signals or other adequate warning, and, further, that as plaintiff endeavored to jump from the track and avoid the injury, his foot was caught in an opening or hole between the rail and surface plank and he was thereby so hindered that his escape was prevented. Defendant denied negligence and alleged contributory negligence on the part of plaintiff, and offered evidence tending to support its positions.

On the issues of negligence, contributory negligence and damages, there was verdict for plaintiff. Judgment on the verdict, and defendant excepted and appealed.

*Cansler & Cansler* for plaintiff.
*Tillett & Guthrie* for defendant.

HOKE, J.   It was urged for error on the part of defendant that the case should have been nonsuited on motion, and chiefly upon the ground that plaintiff, on his own showing, was guilty of contributory negligence as a matter of law.   The position is allowed to prevail in restricted instances, when upon the entire testimony making in support of plaintiff's claim, accepted as true and construed in the light most favorable to him, it is clear that he has been guilty of contributory negligence. *Trull's case,* 151 N. C., 545; *Neal's case,* 126 N. C., 638, and others. But the principle may not be applied to the facts as they appear in the present record.

On the trial of the issues, the evidence on the part of plaintiff tended to show that, on the afternoon of 12 March, 1914, about 6 o'clock, plaintiff left Kensington's store, about 125 to 150 feet from the crossing, going towards his home, which was on the other side of the track; that, on the way towards the crossing and extending 75 feet from the track, there were piles of cross-ties which obstructed the view of the track towards the east, and, further, there was a traction engine on the right of way, also obstructing the view; that plaintiff could see the rail track as he left the store and for 70 feet or so, and that he looked and listened for a train in that direction and heard no signal or anything to indicate its approach; that there was five feet open space from the track to the first pile of cross-ties, and as plaintiff stepped on the crossing he looked towards Charlotte, as he was expecting a train from that direction, and, as he was passing over the crossing, he heard the wheels of the train approaching from the east, and, as he sprang to escape from the track, his foot went down in a hole or open space, so that he had to make two or three hard jerks before he got loose, and as he turned his shoulder towards the train he was struck by the beam of the engine pilot and thrown about 140 feet, breaking his arm in two or more places so that

it had to be amputated; that the schedule time for this train, going towards Charlotte, was 2 o'clock; that this was a much-frequented crossing of a public road running through North Tryon, a suburban mill village of the city of Charlotte, and the train in question was going at a rapid rate of speed and ran on the crossing without signal or other warning. Upon this, the evidence in support of plaintiff's claim, and under the principles established in numerous cases on the subject, the issue of contributory negligence on part of plaintiff was necessarily and properly submitted to the jury for decision. *Johnston v. R. R.,* 163 N. C., 431; *Fann v. R. R.,* 155 N. C., 136; *Wolf v. R. R.,* 154 N. C., 569; *Farris v. R. R.,* 151 N. C., 483; *Inman v. R. R.,* 149 N. C., 126; *Morrow v. R. R.,* 146 N. C., 14; *Sherrill v. R. R.,* 140 N. C., 257; *Norton v. R. R.,* 122 N. C., 910.

Speaking to the question in *Farris' case, supra, Associate Justice Manning* said: "While we are in no wise inclined to relieve the person crossing the tracks of a railroad from the imperative duty of observing the measure of caution so well established for his safety by the well-considered decisions of this and other courts, yet 'it cannot always be said that he is guilty of contributory negligence, as a matter of law, because he did not continue to look and listen at all times continuously for approaching trains, where he was misled by the company or his attention was rightly directed to something else as well' (3 Elliott on Railroads, sec. 1166 a), or that he failed to look in opposite directions at the same moment of time. As is said by *Mr. Justice Hoke,* in *Sherrill v. R. R.,* 140 N. C., 252: 'It is further held that, negligence having been first established, facts and attendant circumstances may so qualify this obligation to look and listen as to require the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed.' *Inman v. R. R.,* 140 N. C., 123; *Morrow v. R. R.,* 146 N. C., 14."

And in *Rodrian v. R. R.,* 125 N. Y., 526, quoted with approval in *Sherrill's case, supra, Agnew, J.,* said: "But when one has looked for an approaching train, it does not necessarily follow as a matter of law that he was remediless because he did not look at the precise time and place when and where looking would have been to the most advantage."

In the present case, accepting plaintiff's evidence as true, he had looked and listened for a train coming from the east as he left the store, and for the first 23 steps, until his view in that direction was obstructed by the traction engine, and piles of cross-ties placed by the company on its right of way, and, in the two steps open, as he stepped upon the cross-ties he looked towards Charlotte, the other direction, because the train was then expected from that point, the schedule time for the present train having been long past, when he was run over and injured by a train coming at an improper rate of speed through a mill village

and which ran on a much frequented crossing without any warning. There was evidence also permitting the inference that the crossing was not in a proper condition, under the principle approved in *Goforth v. R. R.*, 144 N. C., 569; *Raper v. R. R.*, 126 N. C., 568.

In support of defendant's position, we were referred by counsel to *Trull's case*, 151 N. C., 545, and to *Mitchell's case*, 153 N. C., 116, and to *Coleman's case*, 153 N. C., 322.

In *Trull's case* the intestate, standing at a crossing in a position of safety, stepped unexpectedly in front of a switching engine which ran onto the crossing without giving any warning, and was killed. The engine had passed him just a moment before, giving indication that the tracks were being used for switching purposes. There was nothing to obstruct the intestate's view or to distract his attention, and the Court held that there was nothing to qualify the intestate's obligation to be careful for his own safety, and he was guilty of contributory negligence as a matter of law.

And speaking to the precise question as presented in the cases of *Coleman* and *Mitchell, supra,* in a subsequent case of *Fann v. R. R.,* 155 N. C., 136, the Court said: "In *Coleman's case* the plaintiff testified, it is true, that he had both looked and listened, but he also stated that he had done this some distance back from the crossing where his view was obstructed by houses, and that he afterwards, in daylight, drove in a buggy 'with curtains buttoned down both sides and back, across an open space of 65 feet, affording full opportunity to see down the track the way the train came for three-fourths of a mile, and without any effort to further look or listen.' There was nothing here to qualify his obligation to care for his own safety, and recovery was denied. In *Mitchell's case* a deaf and dumb negro, familiar with the schedule of the trains and a frequenter of the train yards, walking towards the crossing just at the time when a train was scheduled to arrive, stopped where a box car obstructed his view and then, with eleven feet of clear space, walked across the track without looking just as a fast train approached, and was struck and permanently injured. There was no evidence that plaintiff had listened for signals, and, hearing none, was induced to venture on the track for that reason, as in *Inman's case* and in *Norton's case*. There was nothing shown to distract his attention."

On the facts appearing in the present appeal, the case comes rather under the principle as applied in *Inman's case* and *Norton's case, supra,* and, in our opinion, as stated, the motion to nonsuit was properly denied.

There was abundant evidence on the part of defendant tending to show that the defendant's train was being properly operated at the time and that the proper signals were given, and, furthermore, that plaintiff received his hurt because he was not properly attentive to his own safety. But, under a charge free from error, the jury has accepted plaintiff's

version of the occurrence, and, this being true, it is clear that an actionable wrong has been established.

There is no error, and the judgment in plaintiff's favor must be affirmed.

No error.