O. C. WORLEY v. LAUREL RIVER LOGGING COMPANY.

(Filed 20 December, 1911.)

1. Railroads—Negligence—Derailment—Unsafe Road—Appliances— Presumptions—Verdict, Directing.

When the evidence is not conflicting and tends to show that the plaintiff was injured while operating defendant's train, by a derailment upon an unsafe roadbed, with unusually dangerous grades and curves, and that the equipment used was defective, the trial judge may properly direct the jury to answer the issue as to negligence in the affirmative if they found the facts to be as testified.

2. Same—Principal and Agent—Disobedience to Orders—Further Orders—Vice-principal—Evidence—Instructions.

When in an action for damages to an engineer operating defendant's train run by steam power, there is evidence tending to show that the injury complained of was caused by a derailment upon an unsafe roadway, and that in the train was a very unsafe car which the superintendent of the defendant company told the plaintiff not to take upon his train again, with further evidence that the car was thereafter loaded with lumber and the plaintiff instructed by another vice-principal of the defendant to take it with him on the occasion of the injury: *Held*, there being no evidence on defendant's part tending to show that its employee who instructed the plaintiff to take the loaded car on the train was not a vice-principal of defendant of equal dignity of the superintendent, it could not avail itself of an instruction precluding recovery if the jury found that the injury would not have occurred had plaintiff obeyed the order of the superintendent not to take the car out again.

3. Master and Servant—Contributory Negligence—Dangerous Conditions—Assumption of Risks.

The doctrine of contributory negligence, in an action for damages by defendant's engineer caused from a derailment and the unsafe condition of the track and equipment, is not made to depend upon the plaintiff's realization that he is using a defective appliance under dangerous conditions, but upon whether he was negligent in doing the particular work, or that the danger was so obvious that the chances of injury were greater than those of safety.

4. Instructions Confusing — Contributory Negligence — Technical
   Correctness—Explanation—Practice.

An instruction, in this case, *Held* technically correct, but tend-
ing to confuse and mislead juries, that if the jury "find from the
evidence that plaintiff was guilty of negligence which contributed
proximately to the injury, even in the smallest degree, you will
answer" affirmatively the issue as to contributory negligence;
and it is the better practice for the trial judge to adhere to the
practice which requires them to explain the conduct of the plain-
tiff which will amount to negligence, and instruct them that if
there is negligence which is the real cause of the injury, he can-
not recover.

5. Pleadings—Contributory Negligence—Unsafe Conditions—Appli-
   ances—Defense—Instructions.

The defendant being sued by its engineer for damages alleged
to have been inflicted on him in a derailment upon an unsafe
track and by the use of unsafe appliances, alleged only in its
answer, by way of defense, that the plaintiff's injury was caused
by his negligently operating or running the train: *Held*, as
there was no evidence of negligence as alleged, the defendant's
prayers for instruction upon contributory negligence were prop-
erly refused.

6. Measure of Damages—Mental Power—Evidence—Instructions.

In an action to recover damages for a personal injury, an in-
struction is erroneous which tells the jury they may consider
under certain conditions and phases of the evidence, as an ele-
ment of damages, the loss by plaintiff of his mental powers, etc.,
when there is no suggestion, at any time, that the plaintiff was
unconscious, or that his sufferings were of that character; and in
this case a new trial is ordered, confined to the issue of damages.

7. Appeal and Error—Objections and Exceptions—Evidence—Prac-
   tice.

Exceptions to evidence objected to must be taken in order to
make the matter available on appeal.

8. Appeal and Error — Objections and Exceptions — Instructions—
   Practice.

Exceptions to the charge may be taken for the first time when
the case on appeal is settled, and they should point out the parts
of the charge to which exceptions are taken.

9. Appeal and Error—Assignments of Error—Case on Appeal—Ex-
   ceptions Noted.

Assignments of error is not a part of the case on appeal and
has for its purpose the grouping of exceptions noted in the case
on appeal, which, if not noted, cannot be availed of as an assign-
ment of error.

**10. Same—Agreement of Parties—Interpretation.**

When it appears 'upon a case on appeal settled by the parties, over their signatures, that each assignment of error begins "the defendant (appellant) excepted for that, etc.," the Supreme Court will assume that the exceptions upon which error was assigned were duly entered.

APPEAL from *Lane, J.,* at September Term, 1911, of MADISON. This is an action to recover damages for personal injuries.

The plaintiff, at the time of his injury, was employed as an engineer by the defendant, a corporation, engaged in the manufacture of lumber, and operating in connection therewith a logging road.

The plaintiff alleges that he was operating the train of the defendant on 14 September, 1910, and was injured by reason of a derailment; that the defendant was negligent, in that it allowed and permitted the track and 'roadbed of its road to be and remain in a poor and dangerous condition, without ballast on its tracks and with many heavy grades and sharp and dangerous curves, and it allowed and permitted the brakes on the cars which the plaintiff hauled over said road in the performance of his duties to become defective and out of repair to such an extent that it was impossible to control and operate a train therewith, and permitted said brakes to remain in said defective and dangerous condition, though often notified of that fact and requested to repair the same; and it failed and neglected to keep and maintain its track and roadbed in a safe condition, and carelessly and negligently failed and neglected to keep and maintain its cars and rolling stock in good repair, so that they could be operated in safety, and did carelessly and negligently fail to furnish and equip its said road with the rolling stock, tools, and appliances in ordinary use at that time.

The defendant denies negligence, and alleges that the plaintiff was guilty of contributory negligence in that he allowed the train of cars mentioned to get beyond his control by reason of careless handling of the same; or was running the same at a dangerous and reckless rate of speed down a grade, thereby causing the same to get beyond his control; or he otherwise

operated said train in a negligent, careless, and reckless manner, by reason of which negligence and carelessness the plaintiff was injured, if any injury he sustained.

The plaintiff offered evidence to sustain the allegations of negligence, and there was no evidence to the contrary.

It was in evidence that on the morning of the day the plaintiff was injured, that he told Mr. Hill, a superintendent of the defendant, that the brake on the car attached to his train was defective, and that he was told by Hill to place the car on a siding, and not to take it out until it was repaired; that the plaintiff placed the car on the siding as directed, and when he returned later he found the car loaded with lumber and took it out in his train under orders from one Anderson, who was the mill foreman, and who overlooked the taking out of cars, and who told the plaintiff that Lieb, a superintendent equal in authority with Hill, said for him to do so.

This car was a part of the train when the plaintiff was injured.

The defendant requested the court to instruct the jury as follows:

1. Before the plaintiff can recover, he must satisfy the jury, by the greater weight of the testimony, not only that defendant was negligent, but that such negligence, if the jury find there was any, was the proximate cause of plaintiff's injury; and if the jury do not so find, they will answer the first issue "No."

2. Proximate cause is the real effective cause of the injury, and if from all of the testimony you find that plaintiff's conduct was the real cause of the injury, then you will answer the first issue "No."

3. If the jury find from the evidence that if plaintiff had obeyed the orders of Hill, the superintendent, he would not have been injured, they will answer the first issue "No."

4. If you believe the evidence in this case, you will answer the second issue "Yes."

5. If you find from the evidence that plaintiff knew the car and engine being run by him were defective, and was acquainted

with the grades and curves of the roadbed, as testified by him, and knew that such operation by him was dangerous, then you will answer the second issue "Yes."

6. Plaintiff having testified that he knew the dangers incident to operating the train under the circumstances, if you believe this evidence, you will answer the second issue "Yes."

7. If you find from the greater weight of the evidence that plaintiff took out the car, which was attached to his engine, contrary to the orders of Hill, the superintendent, and that the use of this car was the proximate cause of the injury, you will answer the second issue "Yes."

8. If you find from the evidence that the superintendent Hill ordered the plaintiff not to use the car which was attached to the engine at the time of the accident, and that plaintiff disobeyed such order, and such disobedience was the proximate cause of the injury, you will answer the second issue "Yes."

9. If the jury find from the evidence that Worley reported to Superintendent Hill, on the day before the accident, that the car was out of order, and that Hill directed him to set the car out on the siding for repairs, and not to use it again until it was repaired, and that the plaintiff, Worley, in disobedience of this order, took the car out for use knowing it had not been repaired, and that such use of the car was the proximate cause of the plaintiff's injury, you will answer the second issue "Yes."

10. There is no evidence that Anderson, the mill foreman, had authority to give orders to the plaintiff, and if plaintiff obeyed an order of Anderson, in taking out the car testified about, instead of obeying the orders of Hill, the superintendent, and was injured in consequence, you will answer the second issue "Yes."

11. If you find from the evidence that plaintiff was guilty of negligence which contributed proximately to the injury, even in the smallest degree, you will answer the second issue "Yes."

There was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

Verdict and judgment for the plaintiff, and the defendant excepted and appealed.

*Gudger & McElroy for plaintiff.*
*Martin & Wright for defendant.*

ALLEN, J.  We have examined the entire record, and have considered the numerous exceptions tendered by the defendant, and find nothing of which it can justly complain on the first and second issues.

The evidence does not disclose a real controversy between the plaintiff and the defendant as to negligence, and the court would have been justified in directing the jury to answer the first issue "Yes," if the evidence was believed.

In addition to the presumption of negligence arising from a derailment (*Marcom v. R. R.,* 126 N. C., 200; *Wright v. R. R.,* 127 N. C., 229; *Hemphill v. Lumber Co.,* 141 N. C., 487), there was ample evidence that the roadbed was unsafe, that the grades and curves were unusual and dangerous, and that the equipment was defective, and there was no evidence to the contrary.

Mr. Hill, superintendent of the defendant, who was introduced by the plaintiff, gives an account of the condition of the road and its equipment, which shows utter indifference on the part of the defendant to the safety of its employees.  He says: "I do not know the condition of the track where the engine ran off; from the mill down there were some very bad places.  The place where the wreck occurred had little to do with it; it was the place where the engine started, from where it left the mill to where it went off.  The track has about a 4 per cent grade in some places and in others about 10 per cent; it would perhaps run about the length of this hall at 4 per cent, and then dip suddenly to a 10 per cent grade.  There are some reverse curves and some very sharp curves.  Just before you get to the point where the engine left the track, you come around a sharp curve and take a right smart dip, and it is almost straight for twenty or thirty yards, and you make a curve, a good stiff curve, and that is where the accident occurred; it was a long and very continuous curve.  I know that the car was loaded with lumber when he started out.  I can't say that Mr. Worley was given orders to bring the car out, but I told Worley not to bring that car out until it was fixed.  The mill foreman over-

looked the bringing out of cars from the mill. He was Van Anderson, and Robert Lieb was over him. I can't recall who ordered the car loaded; don't know. All that was hearsay, so far as I am concerned. The brake was not put on properly, the rod that comes over and under the brakes—the brake-rod, I suppose you call it—passed under the rocking bolster, which the plank laid on, and this rod for some reason would work back next to the king pin, that comes through the rocking bolster, that holds it, and when you went to make a curve, that bolster would shut down on it, and you could not put the brakes on, and if there were several curves you would get a pretty good start, and it would be hard to control the train. The cars had wooden brake-shoes. I don't think there was ever another car made like it, before or since. The wheels turned on the axles. They insisted on loading the cars so heavy at the mill that I gave orders not to load over 3,500 feet on this particular car, and on other cars, and they often had on 5,000 feet. It made them so heavy that a car of that size and the tonnage of the lumber would weigh twenty tons, and without proper brakes behind a ten-ton engine. When you loaded with more than 3,500 feet, with the weight of the car, the weight was more than the engine had the capacity of controlling. The wheels on the cars were not regular car wheels in common use at that time; they were old car wheels. They looked like they were twenty or thirty years old. They turned on the axle and we often had to take the axle out. Sometimes there would be an inch play, and the car wheel would wobble as it went down the track, and when loaded so heavy it sorter cut and dug into the rails and climbed off. This car had been practically in the condition I have stated ever since it was built; there was only a piece of iron that was supposed to hold the brake-rod back, and it would break and they would put another little piece of iron in there, and it would break, and the next week something would happen again. I don't know whether the brakes on that car were like those in ordinary use on railroads of that date or not. I never saw a car like it before, and the brakes were in keeping with the car."

His Honor, however, instead of directing the jury to answer the first issue "Yes," if they believed the evidence, submitted the question of negligence to them, and gave substantially the first and second prayers for instructions. He could not have given the third, because there was evidence that, after the order of Hill, an employee of the defendant, equal in authority to Hill, gave him a different order.

The principal contentions of the defendant on the issue of contributory negligence are that the plaintiff continued to operate the train with knowledge of the defects and the danger, and that he was acting contrary to the orders of his superintendent, Hill.

We do not approve the doctrine that an employee is barred of a·recovery because he realizes that he is using a defective appliance, and has some appreciation of the danger of doing so, and think the better rule is that under such circumstances there is no contributory negligence unless the employee is guilty of a negligent act in doing his work, or the danger is so obvious that the chances of injury are greater than those of safety. *Thomas v. R. R.,* 129 N. C., 394; *Hicks v. Cotton Mills,* 138 N. C., 332.

The contention of the defendant, if sustained, would encourage employers to use antiquated and defective machinery, and to notify employees of the danger, as they would thereby escape liability for injury.

The prayers for instruction based on the idea that the plaintiff could not recover if he acted contrary to the orders of Hill, were properly refused, because there was evidence that the plaintiff, at the time of his injury, was acting under the orders of another superintendent who had the authority to control him.

The principle embodied in the eleventh request for instruction is supported by authority, and may be technically correct, but we think, if applied in instructing juries, it would tend to confuse and mislead, and that it is wiser to adhere to the practice which requires the judge to explain the conduct of the plaintiff which will amount to negligence, and that if there is negligence which is the real cause of the injury, he cannot recover.

If we depart from this rule and say that the slightest negligence on the part of the plaintiff contributing to his injury is fatal to his cause of action, we must apply the same standard to the conduct of the defendant when considering the first issue, and in practical operation, the search for the real efficient cause of the injury may easily be lost sight of.

Again his Honor could have denied all the prayers for instructions on the second issue, because the only conduct of the plaintiff alleged in the answer to have been negligent was in the operation of the train, and there was no evidence of negligence in this particular.

On the issue of damages his Honor told the jury that the loss of mental powers by the plaintiff might be considered as an element of damages, when upon an examination of the evidence there is no suggestion that the plaintiff was at any time unconscious or that he suffered even momentarily an impairment of mental powers. We doubt if this affected the verdict, but we cannot say it did not, and under the authorities in this State this instruction was erroneous. *Smith v. R. R.,* 126 N. C., 712; *Wilkie v. R. R.,* 128 N. C., 113; *Bryan v. R. R.,* 134 N. C., 538.

In the *Bryan case* a new trial was ordered because a charge was given that the jury might consider the loss of physical and mental powers in estimating damage, when there was no evidence of the loss of mental powers, and this case was approved in *Jones v. Insurance Co.,* 153 N. C., 391.

We must, therefore, order a new trial, but it is restricted to the issue of damages.

Partial new trial.

### MOTION TO DISMISS.

ALLEN, J. This is a motion to dismiss the appeal or to affirm the judgment, upon the ground that there are no exceptions in the record upon which the assignments of error are based.

Exceptions to evidence must be entered during the progress of the trial, and it is not sufficient to object. The exception must be noted.

Exceptions to the charge may be taken for the first time when the case on appeal is settled, and should point out the parts of the charge to which exceptions are taken.

The preparation of the assignment of error is the work of the attorney for the appellant, and is not a part of the case on appeal, and its office is to group the exceptions noted in the case on appeal, and if there is an assignment of error not supported by an exception, it will be disregarded.

Applying these principles to the record in this case, the motion of the appellee must be denied.

The case was not settled by the judge, but by agreement of counsel. The exceptions and assignments of error follow the charge, and immediately thereafter we find the signatures of counsel for plaintiff and defendant, and each assignment begins, "The defendant excepted for that," etc.

This is, in our opinion, an agreement by counsel that the exceptions set out in the assignments were duly entered.

Motion denied.