Civil action to recover damages for alleged killing of plaintiff's intestate.
There was evidence on part of plaintiff tending to show that on 23 April, 1910, the intestate, an employee of defendant company, then making $1 or $2 a day, a young man of 21 or 22 years of age, of good habits, industrious, of good vigor of mind and body, was run over and fatally injured, dying soon after, by a steam engine of defendant company which was being operated over defendant's road in the course of the company's work; that at the time of the injury defendant was engaged in doing a large lumbering business in Caldwell County, N.C. the mills being situate at Mortimer, in said county, and the logs being hauled there from a point about 4 miles further up, the company having a roadbed to that point with iron rails and steam engine of the ordinary kind used in such work, constructed so as to move backwards and forwards with equal facility and having a running board 8 or 10 inches along the side and across the rear of the tender, about 10 inches above the track, where employees were accustomed to ride and where they might (42) stand or move as the course of their duties should require, and there was a handrail higher on the tender to which they might hold as they stood or moved about; that the particular duties of the intestate, at the time, was as "top loader" — one who laid the logs straight and secured them as they were lifted onto the cars by machinery; the evidence of *Page 100 
plaintiff tending to show that this was not a position of authority and that he directed the engineer only in the sense that he gave him proper signals as a train of cars had to be moved backwards or forwards in efficient performance of the work; that the engineer was one Joe Effler, and, on the day in question, he was running the engine backwards over the road at 3 or 4 miles an hour; that intestate and three or four other employees were on the tender, and he and two others were standing on the running board at the rear of tender, Garfield Hughes being on the outside to the right, the intestate next, and Arthur Blevins on the left, and, at a point not far from the logging yards, a hemlock limb, 5 to 7 feet long and 1 1/2 to 2 inches in diameter at the smaller end, which was stuck in a hole or pile of brush in the bank and projecting towards the roadbed at an angle of about 45 degrees, struck the intestate about the feet and in some way prized him off the engine, throwing him prone upon the track and, at about 70 or 75 feet further along, he was run over and fatally injured, dying in about an hour and a half. Several eyewitnesses testified to the fact that the intestate was knocked off the engine by the hemlock stick. There was evidence further for plaintiff tending to show that this stick had been in such a position, leaning towards the road, for a week; that the end was worn slick where it had scraped along the engine and cars; that there were signs of hemlock bark along the journal boxes of the engine and on the running board, giving indication that the stick had been continuously rubbed by the passing cars. There was also a statement of this engineer, Joe Effler, who was afterward examined as a witness for defendant, and which seems to have been admitted without objection, that he had noticed the stick and its position for a week before the occurrence. There was further testimony for plaintiff tending to show that when he was first knocked off there were calls and cries both from the crew and from persons outside the track to the engineer in the endeavor to attract his attention, but that he was looking out of the window at the side, and they failed to attract his attention, and the train ran, as stated, 70 to 75 feet up the track before the intestate was run over, and finally one man rushed up to the cab and called out to him, when he immediately stopped the engine, which was and had been moving at a very slow pace, not more than 3 or 4 miles an hour.
There was testimony on the part of defendant company to the effect that no stick had been seen in any position threatening the train (43) before this occurrence; that the intestate's position as top loader gave him full authority over the train and crew, and that he was standing on the running board, where he had full opportunity to look ahead on the track, and if there was any obstruction threatening the *Page 101 
train he could have observed and noted it; that he was not holding by the rail along the engine at the time, but was standing there smoking, with his hands under the cape of his overcoat; that Garfield Hughes, who was on the outside nearer the stick, avoided the collision and escaped harm by reason of holding to the handrail and lifting himself up, and, further, that the intestate, before his death, had said to several persons that he was, in some way, pushed off the running board by one or both of the young men who were in there with him; that these men were there without permission, and the inference being that, in a playful scuffle between them, the intestate was unintentionally knocked off the engine.
On the ordinary issues in such action of negligence, contributory negligence, and damages, there was verdict for plaintiff, and defendant excepted and appealed.
It was earnestly urged for error by defendant that his Honor refused to nonsuit plaintiff both on the pleadings and the evidence; but the position cannot be sustained. It is fully established with us that an employer, in the exercise of reasonable care, must provide for his employees a safe place to do his work, and a failure of duty in this respect will constitute negligence. Cook v. Cranberry Furnace Co., 161 N.C. 39; Jackson v. LumberCo., 158 N.C. 317; Tanner v. Lumber Co., 140 N.C. 475.
An examination of the authorities will show that the position is very insistent in the case of railroads where a breach of duty in this respect is not unlikely to result in serious and often fatal injuries, and, in various cases, it has been held that these logging roads come clearly within the principle and are held to the same standard of care. Worleyv. Logging Co., 157 N.C. 490; Sawyer v. R. R., 145 N.C. 24; Hemphillv. Lumber Co., 141 N.C. 487. In reference to these obligations, inSawyer's case, supra, it was said that "These logging roads, in various instances and in different decisions, have been described and treated as railroads and held to the same measure of responsibility and the same standard of duty," citing Hemphill's case, supra, and Simpson v. LumberCo., 133 N.C. 95, and Craft v. Timber Co., 132 N.C. 152; and further: "This duty arises not so much from the fact that railroads are common carriers or quasi — public corporations as from the high degree of care imposed upon them on account of the dangerous agencies and implements employed and the great probability that serious and in many instances fatal injuries are almost certain to result in case (44) of collision." *Page 102 
Considering the present case in the light of these decisions, it is clear, we think, that the court would not have been justified in directing a nonsuit, there being facts in evidence tending to show that for a week or more the defendant's road had been left with a limb or snag deep in the ground at one end and leaning over towards the railroad track in such manner that it day by day scraped along the sides of the engine and cars and where it was liable, at any time, to cause an injury of some sort to the train or its employees. Hudson v. R. R., 142 N.C. 198; Drum v.Miller, 135 N.C. 204. Again, a nonsuit would have been improper because of facts in evidence tending to show that, after the intestate was knocked off the engine and was prone upon the track, the train, running at only 3 or 4 miles an hour, continued to move along the track for 70 or 75 feet before the fatal injury was received, and meantime persons on the train and off endeavored in every way to attract the attention of the engineer and failed to do it until one of them went right up to the cab, the testimony permitting the inference that he was looking out to the side and entirely inattentive to the movements of his train or the safety of the persons who were on it. In that aspect of the case the defendant company might well be held responsible by reason of the failure to avail itself of the last clear chance of avoiding the injury; this whether the intestate was or was not guilty of contributory negligence, as the term is generally used and applied. Snipes v. Mfg. Co., 152 N.C. 42. It was further contended that there was error committed in modifying certain prayers for instructions by defendant, chiefly in reference to the question of contributory negligence. Request No. 2, being to the effect that a servant is required to exercise ordinary care for his own safety, to observe the machinery and appliances used in connection with his work, and to discover those dangers which a man of ordinary prudence would discover, and, if he fails in this duty and is thereby injured as an immediate result, he cannot recover damages. "Therefore the court charges you that if you find by the greater weight of the evidence that plaintiff's intestate was riding upon the rear of defendant's engine, in plain view of the obstruction upon or over the track, and if you find there was an obstruction and he failed to observe same, and further failed to avail himself of the safety appliance, called the handrod in the evidence, and you further find that by using same he could have saved himself, the court instructs you that he was guilty of contributory negligence, and you would answer second issue `Yes.'" The court gave the instructions as prayed, with the modification, after the words, "could have saved himself," by adding: "And you find that he was negligent in regard (45) to these omissions and his neglect contributed to the injury." In other words, the court referred it to the jury to determine whether, *Page 103 
upon the facts in evidence as suggested in the prayer, the intestate was negligent in failing to observe and note the obstruction and in failing to use the handrod, and whether such neglect on his part was a contributory cause of the injury.
In Russell v. R. R., 118 N.C. 1098, and in cases before that time, it was declared to be the correct principle that if, on a given state of facts, two men of fair minds could come to different conclusions as to the existence of negligence, the question must be determined by the jury, and that a like principle should prevail in reference to the question of proximate cause. The position has been since repeatedly upheld with us, and is also approved by the Supreme Court of the United States as the correct rule for the trial of causes of this character. Graves v. R. R.,136 N.C. 3; Ramsbottom v. R. R., 138 N.C. 39; Harvell v. Lumber Co.,154 N.C. 254; Alexander v. Statesville, 165 N.C. 528; Grand Trunk R. R. v.Ives, 144 U.S. 408; Davidson v. Steamship Co., 205 U.S. 187.
Applying the rule to the facts in evidence, we think that his Honor was clearly right in submitting the question as to the conduct of the intestate to the decision of the jury. True, there was testimony on the part of the defendant to the effect that he was "top loader," a position of authority, and that he had entire charge of the train and its crew; but there is also the permissible view that he was a young man of 21 or 22 years of age, getting only $1.50 to $2 per day; that he had only held the position a short while, and that his duty as top loader was only to see that the logs were properly laid and secured on the cars, and that he directed the engineer only in the sense that when they were engaged in loading he signaled the engineer when to move back and forth and as the necessities of the work required; and, in any event, he was not in charge of the train at that time nor in a position to direct or control its movements. He was only out on this running board where the hands were accustomed to ride on their way to work, the train being in motion, and the duty on him, under such circumstances, to observe and note an obstruction of this character and correctly estimate its proper effect — a small stick, leaning over towards the rail — was a very different obligation from that incumbent on defendant company and its employees, charged with the especial duty of keeping the track and roadbed in a reasonably safe condition. In the latter case it would undoubtedly import menace tending to inculpate, whereas, to the intestate, it might very well be a question of debate and one that, under our law, must be referred to the jury.
On this exception there seems to be some discrepancy between the defendant's assignment of error and the case on appeal, for, in the assignment, defendant substitutes for his prayer the modification (46) *Page 104 
of it as contained in his Honor's charge, but the true bearing of the exception is readily ascertained from the case on appeal, showing that his Honor modified defendant's prayer for instruction, as stated.
The further exception, that his Honor prefaced this portion of his charge by stating "this is defendant's prayer for instruction," is without merit. The statement and the entire context shows that the court intended it as a modification of defendant's prayer, and the jury must have so understood it.
The prayer, in effect, requested the court to rule on the question of intestate's conduct as a matter of law, and his Honor submitted it for the consideration of the jury; and the position, as we have stated, is in accord with our decisions. The court was further requested to charge the jury that, "if they found that defendant had provided a handrail, conveniently located for the use and safety of persons riding upon the running board at the rear of the tender, and that intestate was riding upon said running board while the engine was in motion and was standing up in easy reach of said handrail, with his hands in the bib of his overalls or in front of him, and he stood so at the time of his fall, this within itself would be contributory negligence, and they should answer the second issue `Yes.'"
The court gave this and another prayer substantially similar, adding thereto that under the circumstances suggested the jury would answer the second issue "Yes," provided they found further that the failure to use this handrail "proximately contributed to the injury."
It is the accepted position, in actions of this kind, that on the two issues of negligence and contributory negligence the negligent conduct of defendant or of the claimant has no controlling significance unless it has been the contributory and proximate cause of the injury, or one of them.
In a case at the present term, McNeill v. R. R., 167 N.C. 390, the charge is approved to the effect "That in order to enable you to answer the first issue (that as to defendant's negligence) `Yes,' you must find that the train had no headlight, and that not having a headlight was the cause and the proximate cause of the injury"; and Associate Justice Allen, in a well sustained opinion, shows that this is an essential requirement to the proper decision of such an issue. The same principle prevails on the issue as to contributory negligence; it is a very important part of its correct definition, that it is the proximate cause of the injury.
Numerous authorities with us are in support of the position, and they hold, too, that where negligence is shown to have caused an injury, it is only in exceptional cases that the question of proximate cause can be *Page 105 
withdrawn from the jury. Boney v. R. R., 155 N.C. 95; Farrisv. R. R., 151 N.C. 484; Coley v. R. R., 129 N.C. 407; Brewster (47)v. Elizabeth City, 137 N.C. 392.
It is true that the testimony shows that the intestate was standing on the running board and had no hold on the handrail. It was shown, also, that another man standing by him was enabled to save himself after he saw the stick by catching hold of the handrail; but, as we have heretofore stated, the intestate had no part in directing the train and was not in a position to control its movements. He was not charged with the special duty of looking ahead for its safety, nor did he have anything to do with keeping the roadway in repair. He was just riding on the engine to his work as the others were accustomed to do, and, as we have heretofore stated, the character of the obstruction was not such as to affect him with notice of a probable injury as a conclusion of law. If he had fallen off by the ordinary jars and jolts of the train's movements, there might be more force in the position, but it is not at all a necessary conclusion that the intestate could have saved himself if he had taken hold of the rail, and, on all the facts as presented, we concur in his Honor's view that, on the issue as to contributory negligence, the question of proximate cause was for the jury.
Defendant excepted, further, that his Honor in charging the jury "failed to instruct them at any point as to the law arising on the evidence and contention of defendants that some one of certain employees pushed plaintiff's intestate from the engine and caused his death." This, in any event, was only an omission on the part of his Honor, and the proceeding could very well be sustained on the ground that, if defendant desired that such a position be referred to, he should have made a request to that effect, as he did on the other points. Pardon v. Paschal, 142 N.C. 538; S.v. Worley, 141 N.C. 764; Simmons v. Davenport, 140 N.C. 407. But it is not necessary to rest the matter here on this principle. From a perusal of the record it plainly appears that the principal issue between the parties on the testimony was whether the intestate was negligently knocked off by the stick or snag, or was pushed off by one of the other hands, and defendant's counsel therefore did not think it necessary to make a request on the subject.
Plaintiff's complaint was that intestate was knocked off by this stick, negligently left as an obstruction on defendants' road, and not otherwise, and there was no occasion for his Honor to make special reference to a different cause. In support of this view, it was stated on the argument for appellee, and not challenged, that counsel for plaintiff admitted in the argument before the jury that if the intestate was pushed off by one of the employees, his client had no cause of action, and this is no *Page 106 
doubt the reason that the capable and diligent counsel did not (48) think it necessary to have any reference to the matter made by the judge.
The exceptions to testimony are without merit, and were very properly not insisted on in defendant's brief. Lynch v. Mfg. Co., 167 N.C. 98.
After careful consideration, we are of opinion that no reversible error appears, and the judgment on the verdict must be affirmed.
No error.
Cited: Shepard v. R. R., 169 N.C. 240; Mumpower v. R. R., 174 N.C. 745;Moore v. Rawls, 196 N.C. 128.