### Helen C. Hovenden, Appellant, *v.* The Pennsylvania Railroad Company.

*Negligence—Railroads—Stepping in front of moving train—Stop, look and listen—Contributory negligence.*

In an action to recover damages for the death of plaintiff's husband who was killed at a grade crossing, it is proper to enter a compulsory nonsuit where the evidence showed that the deceased was killed on the second track from the side from which he started to cross, and that he did not wait for the smoke from a train passing on the first track to clear away so that he could see whether the second track was clear.

Argued Feb. 3, 1897. Appeal, No. 585, Jan. T., 1896, by plaintiff, from judgment of C. P. Montgomery Co., March T., 1896, No. 41, refusing to take off compulsory nonsuit. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for the death of plaintiff's husband. Before WEAND, J.

The court entered a compulsory nonsuit which it subsequently refused to take off.

The facts appear by the opinion of the court below, overruling the motion to take off the nonsuit which was as follows :

The action was for damages in causing the death of plaintiff's husband. At the conclusion of plaintiff's testimony, the defendant's counsel moved for a compulsory nonsuit which the court granted, because of the deceased's contributory negligence. The accident occurred at the crossing of the Germantown turnpike road by the Trenton cut-off branch of the Pennsylvania

Railroad in Plymouth township, Montgomery county.    The crossing is almost at right angles, and the railroad tracks are straight for a considerable distance.    Approaching the crossing from the north, the nearest track would be that used by west bound trains, and looking to the east, approaching trains could be seen for a mile.    Looking to the west, the testimony of Alan Corson, a civil engineer, showed that if he "stood a foot inside of the inside rail of the west going track, with a car a hundred feet away from the crossing on west bound track, his angle of vision would strike an object crossing on the east going track two hundred and ninety-two feet away from my point. . . . Assuming that a man is standing on the south rail of the west bound track looking to the west, the greatest distance at which he could see an approaching train from the west going east, would be about four hundred and thirty feet.    Nineteen times out of twenty there would be no trouble in case a man sees the train four hundred and thirty feet off; if he is on the south track wanting to get across the east bound track to a place of safety before the approaching train would reach him, he has got about eight or ten feet to go, and the train has about four hundred and twenty;   there might contingencies arise, of course, I do not know."

The decedent lived in the immediate neighborhood of the accident, and was familiar with the crossing.    At the time of the accident he was in good health and wore glasses.    He was farsighted in one eye, which was corrected by using glasses. The Norristown and Chestnut Hill electric railway occupies part of the bed of the public road, but at that time it did not extend across the tracks of the railroad company.    Passengers alighted from the trolley cars on either side of the railroad tracks, and resumed the trolley cars on the opposite side.    On the day of the accident, about 5:30 in the evening, Aug. 14, 1895, Mr. Hovenden, with a number of others, was on board a trolley car coming from the north.    On reaching the end of the electric railway tracks they alighted and were warned by the conductor that a train was approaching.    A freight train with a number of cars was coming from the east on the west bound (nearest) track.    It made considerable noise, and the engine emitted considerable smoke, and the passing cars raised a dust.    As the freight train cleared the crossing of the public

road, Mr. Hovenden, with others who had been standing close to the track, started to cross. He had not yet reached the east bound track when he was struck on the side by the steam chest of an engine coming from the west on the east bound track. The engine was running at a high rate of speed, and the plaintiff's witnesses all swear they heard no bell or whistle. It is also testified that their vision was obscured by the smoke and dust. William O'Brien, the motorman of the trolley car, a witness for plaintiff, testified : " After the freight train had passed by a few feet beyond the crossing, the crowd slowly moved towards getting over, Mr. Hovenden being on the front seat of my car and another gentlemen ; and a little girl was about four or five seats back, I judge, being a little quick, she stepped out quickly. She was on the front line. After the freight train got by, they moved across slowly. This engine came shooting out and caught Mr. Hovenden and the little girl. When Mr. Hovenden was struck, the freight train was about fifty feet away from the crossing, as near as I can tell by guess work; may be more than that. That afternoon the wind was calm and the air dusty and dry, and the fireman was firing up as they passed by. The smoke fell down. It was a black heavy smoke. It fell down toward the ground over the train. I could not say exactly what part of it struck Mr. Hovenden, because the crowd was in front of me. I judge from the way he was rolled and thrown that some part of the side of the engine struck him. He did not get in front of the engine because it threw him to the side of the west bound track. . . . After the train had passed, these people stood there a trifle, and then moved over toward going across the track to take the car on the other side. They stood there about as long as anybody would stand to see if there was a train coming the other way. I do not know how long it was from the time that Mr. Hovenden and the rest of these people started to go across the track until he was struck. May be two minutes, a minute or two minutes. I cannot tell. I am only guessing. I do not think it was as quick as five to ten seconds. It might have been a half minute." Vincent McGrath testifies : " The rear of the train going west had passed Mr. Hovenden three lengths of a car, when he started to cross the track. It was three lengths of a car away when he was struck. The west bound train had gone. He waited until

the train had gone forty or fifty feet. It caught him immediately." Joseph Richard testified: "As the train got past we looked leisurely and started across, and as we walked, the train coming this way, the engine and tender, I saw Mr. Hovenden throw up his hand. The engine ran fast. I fell back. The next thing I saw he was fast on the cow catcher of the engine. He was struck by a box, I think, that round concern on the side of the engine. He was not between the tracks when he was struck. He was just about stepping on the track. I judge on account of the smoke and dust he could not see it. I could not see it. I dare say the whole thing was over in a minute. I do not think it was less than a minute from the time we started across; the time Mr. Hovenden was one place and the engine another place. As soon as the freight train passed we three started over, etc. Just as Mr. Hovenden was stepping on the track he was struck."

We are of opinion that this evidence disclosed contributory negligence on the part of plaintiff's husband in that he failed to stop, look and listen before attempting to cross. His clear duty was not only to wait for the departing train to clear the way, but to wait until he could see whether the other track was also clear. The very fact that the going west bound train obstructed his view of the east bound track should have compelled him to wait until his view was unobstructed. The rule which requires a traveler to stop, look and listen would amount to nothing if he could cross the track in rear of a moving object without stopping or looking to see whether the other track was clear. It is also apparent from the testimony that the party attempted to cross without looking or listening. Mr. Hovenden was struck in a minute from the time he started to cross. He had not more than fifteen or eighteen feet to travel. This could not take him more than fifteen seconds of time at an ordinary walk. The freight train had gone, say, sixty feet. Assuming that it traveled three times as fast as Mr. Hovenden walked, it took it twenty seconds to make the sixty feet. Mr. Hovenden, therefore, could not have waited five seconds, if he waited at all, and according to the testimony, if he stood off the track his view of an approaching train on the east bound track when he started to cross was then obstructed by the freight train. If, however, he had stood on the south rail of the west

bound track and looked west he would have had a clear view for two hundred and ninety-two, if not four hundred and thirty feet. All the evidence shows that after starting he kept right on and ran against the engine. The manner in which he was struck also shows his negligence. He had not yet reached the track, and was just stepping for it, when the engine struck him. It is inconceivable that if he had looked at all before making the final step that he could not have seen the engine, for it must have been within a short distance of him. Much stress is laid upon the fact of the smoke and dust, but this to our minds is against the plaintiff. A thick cloud of smoke which prevents the view is as much an obstruction as any other object. If it was the duty of the traveler to wait until the passing train had cleared his view it was as much so to wait until the smoke and dust allowed him to see his way. The smoke left by the freight engine was part of it, and the traveler had no right to walk into it if it prevented him from seeing his way clear. The cases upon the subject are numerous. In Moore v. Phila., Wilmington & Baltimore R. R. Co., 108 Pa. 349, the plaintiff crossed the first track and waited between tracks for the train to pass. He was struck by an engine on the other track and was nonsuited. In Marland v. Pittsburg & Lake Erie R. R. Co., 123 Pa. 487, Justice GREEN says : "He attempted to cross the track immediately in front of the train which he could not possibly have looked for without seeing. . . . The attempt to cross the track in front of an approaching train so close that the plaintiff was instantly struck was an act of gross carelessness on his part, contributing directly to his injury and this precludes any recovery." In Pa. R. R. Co. v. Mooney, 126 Pa. 244, Justice GREEN says : "It was suggested in the argument of the case at bar that Mooney's view of the approaching train might have been obscured by the smoke of another train which was passing in the opposite direction, and which it was said by some of the witnesses hugged the track. But that theory is entirely dispelled by the affirmative testimony of Archer, the plaintiff's chief witness, who testified that he saw the train strike Mooney, although he was a hundred to a hundred and fifty yards away. Moreover, the law requires listening as well as looking for a coming train, and obstruction of vision is no defense against a failure to listen."

As the witnesses in this case saw the accident, notwithstanding the smoke, it is difficult to see why they could not have seen the engine. In Kraus v. Penna. R. Co., 139 Pa. 272, it was said: "Before crossing a railroad track one is bound not only to stop, look and listen, at a place where he can see if possible, but if familiar with the place and his view be obstructed by a passing train, he should remain until his view of the track is clear; otherwise, he is guilty of contributory negligence." This language is especially applicable to the case in hand, for Mr. Hovenden was familiar with the place, and if his view was obstructed it was his duty to wait. Part of Judge EWING's decision which was affirmed by a per curiam opinion may well be cited here. He says: "There is evidence that the locomotive of the freight train emitted a dark smoke, obscuring the view. With the freight train on the second track, his view of the third track was prevented except for the portion that the freight train had passed. The party had been standing before the freight train had passed, and the wife says they looked and listened. Had they waited until the freight train had sufficiently passed, there would have been no difficulty in seeing up to near Millvale station. If a man is bound to stop, look and listen before going on a railroad track, it is vain to say that he did so when it is evident that if he did look and listen he must have seen and heard the train. . . . He must seek a place to look where he can see, if that can be done, and if there be an obstruction to his view, which is rapidly passing away, he should wait its removal." To the same effect is Myers v. Baltimore & Ohio R. R., 150 Pa. 386. In Holden v. Penna. R. R., 169 Pa. 1, the court says: "Where a collision takes place at the moment when a person, either on foot or in a carriage, goes upon a railroad track, he cannot recover, no matter what his testimony may be as to stopping, looking and listening, because the fact of the immediate collision conclusively proves that he did not exercise his senses as to the approaching train." We think the case of Hughes v. D. & H. Canal Co., 176 Pa. 254, rules the present contention and sustains our view. Mr. Justice MITCHELL says: "Jones says that when they reached the crossing they waited for a coal train on the north bound track to pass, and as soon as it got about twenty feet past they drove slowly on the track, looking and listening, and were almost immediately struck

by a train on the other track, the engine, he says, 'was on our buggy without almost our knowing anything about it.' It is plain that the accident arose from that fruitful source of danger, fixing attention so exclusively on one track as to divert it from necessary care in regard to the other. The questions of the proper place to stop, look and listen, and the action of the party in regard to it are usually for the jury, and have been so declared in a long line of cases cited by appellee of which perhaps the closest to the present is Whitman v. R. R., 156 Pa. 175. But there are exceptions where the inference from admitted facts is clear, and it becomes the duty of the court to declare the law as a result. The element which distinguishes this case from those relied upon by appellee is the temporary nature of the obstruction to the view. The deceased drove on the south bound track when the view of it was cut off by the rear end of the passing train on the other track, and was struck so immediately that it is beyond all possible doubt that the coming train which struck him could have been seen and the accident escaped had he waited but a single instant until the receding train on the north bound track had cleared the view. Under such circumstances it was held in Kraus v. R. R. Co., 139 Pa. 272, that a nonsuit was properly entered."

The case stands thus. The husband of plaintiff approached a railroad crossing and stopped to allow a receding train on a west bound track to pass. This train obscured his view of the other track for a considerable distance. Without waiting for the receding train to pass a sufficient distance to permit him to see a coming train on the other track he started to cross, and before he put foot on the east bound track he was struck. Had he waited a few seconds he could have seen the train, or had he looked when on the west bound track he could have had a clear view for at least two hundred and ninety-two, if not four hundred and thirty feet, and thus have seen the coming train ; or, had he looked before taking his last step he must have seen the engine for it was right upon him. We are, therefore, of opinion that the nonsuit was properly entered and, now, December 7, 1896, the motion to take off nonsuit is overruled.

*Error assigned* was judgment refusing to take off compulsory nonsuit.

*N. H. Larzelere*, with him *M. M. Gibson*, for appellant.—Persons crossing at the point in question, to observe trains coming from the west, were obliged to go upon the tracks, and defendant, ex necessitate, put them in a place of danger. This brings the case within the principle of Penna. R. Co. v. Werner, 89 Pa. 59, and cognate cases, which this court has recognized: Penna. R. Co. v. Werner, 89 Pa. 59; Lake Shore R. Co. v. Frantz, 127 Pa. 297; McNeal v. Ry. Co., 131 Pa. 184; Ellis v. R. R. Co., 138 Pa. 522; Ely v. Ry. Co., 158 Pa. 233; Smith v. R. R. Co., 158 Pa. 82; Hoffmeister v. R. R. Co., 160 Pa. 568; Link v. R. R. Co., 165 Pa. 75; Davidson v. Ry. Co., 171 Pa. 522; Gray v. R. R. Co., 172 Pa. 383; Philpott v. R. R. Co., 175 Pa. 570.

*C. Henry Stinson* and *William F. Solly*, with them *Charles H. Stinson*, for appellee.—The learned court below properly followed the cases of Moore v. Philadelphia, Wilmington & Baltimore R. R. Co., 108 Pa. 349; Marland v. Pittsburg & Lake Erie R. R. Co., 123 Pa. 487; Penna. R. Co. v. Mooney, 126 Pa. 244; Kraus v. Penna. R. Co., 139 Pa. 272; Holden v. Penna. R. Co., 169 Pa. 1; Hughes v. Delaware & Hudson Canal Co., 176 Pa. 254.

PER CURIAM, February 22, 1897:

We are clearly of opinion that this case comes within the line of decisions that where a person steps upon a railroad track immediately in front of an approaching train and is instantly struck and injured he is conclusively guilty of contributory negligence, and can recover nothing for the consequences. The deceased either ran against the engine or was just in the act of stepping on the track when he was struck. We think the nonsuit was properly granted for the reasons stated in the opinion of the learned court below.

Judgment affirmed.