CLARK, C. J., dissenting.
This is an action to recover damages by the plaintiff for injuries sustained by him in consequence of the alleged negligence of the defendant. The defendant denies negligence, and pleads contributory negligence.
In the southern part of the town of Reidsville the defendant had and maintained, at the date in question, three tracks only a few feet apart, all of which are parallel and run practically north and south. The easternmost track is the main line going north. The one just west of and next to that is the main line going south, and the third one on the west is an industrial or sidetrack. The injury complained of was sustained practically in front of the office of the Edna Cotton Mill. At this point, and some distance north and south, there is a public highway just west of and adjacent to the roadbed of the defendant, and another public highway just east of and adjacent to the defendant's roadbed, both highways paralleling the defendant's tracks. In front of the office of the Edna Cotton Mill, which is on the west side of the defendant's tracks, the defendant's tracks are on an embankment some three feet high; on the east the defendant's road is practically level with the public highway. Some seventy-five yards north of the place of the collision between defendant's train and plaintiff, a public highway crosses the defendant's tracks, and some one hundred yards south of the point of injury there is another highway crossing defendant's tracks. In front of the office of the Edna Cotton Mills there are wooden steps, leading from the public highway to and upon defendant's roadbed. These steps had been maintained for more than ten years, and they had been renewed in the meantime one or more times, and over these steps and across defendant's three tracks, many persons were accustomed to go every twenty-four hours, east and west as occasion offered. On the day in question, to wit, 11 August, 1917, the plaintiff, being on the west side of the defendant's tracks near the point of the injury, had occasion to go across said tracks to a store on the east side; that he approached the defendant's roadbed and tracks at a point some distance north of the steps above referred to; that on the defendant's roadbed or embankment there was a path running north and south; that there was a string of freight cars standing on the *Page 415 
sidetrack above referred to, and in consequence of the presence of these cars, the plaintiff, after getting on the embankment of the defendant's road, had to and did walk south along the side of these freight cars to or about the steps above referred to, as the presence of these cars, according to plaintiff's evidence, prevented him from crossing at the point where he got on defendant's embankment or roadbed, until he passed the end of the boxcars, and when he got to the south end of the string of cars or a few feet north of the steps above referred to, there was a long freight train going north over the easternmost track; that at this point and for some distance in either direction the grade going north was heavy, and as a result the engine pulling the freight train going north was exhausting heavily and throwing out great clouds of very dense smoke, which settled down between the train going north and the string of boxcars above referred to, and over and around where the plaintiff had stopped, at or near the south end of the string of boxcars, to await the passing of the northbound freight train. After the caboose of the northbound freight train had passed, the plaintiff, who had been standing very near the steps for some time, waiting for the said train to pass, passed in an easterly direction beyond the end of the string of boxcars; that there he looked in both directions, that is to say, south and north, to see if there was any approaching train; that he saw none; that the smoke at this particular time and place surrounding him was quite dense; that he heard no signal, such as the whistle or bell, or other signal of like character, and he was near enough to have heard such had any been given for the approach of a train to the public crossing above referred to as being seventy-five yards north of where the plaintiff was standing, nor for the approach to the crossing in front of the mills, nor for the approach to the public crossing some one hundred yards south of where plaintiff was standing, and seeing no train approaching, and hearing no signal, plaintiff started to cross the tracks of the defendant in an eastern direction, and as he approached the tracks, next to the side or industrial track, the front of the engine of the freight train proceeding from the north struck the plaintiff and seriously injured him, from which he has never recovered. The plaintiff at the time of the injury was some fifteen or sixteen years of age. Both the plaintiff and the witness, Cheshire, stated that they heard no signal given, nor did they hear the approach of the train.
There was a space of a little more than eight feet between the sidetrack and the main line track.
The plaintiff, among other things, testified as follows: "I had passed over the sidetrack and stepped upon the southbound track, and that's where it hit me; I couldn't see it for the smoke and dust and the boxcars. There was lots of smoke and dust that the train had raised. I could *Page 416 
not see the train for these boxcars; and after passing them, I looked to the north and couldn't see the train, and I did not hear it. I waited until the northbound train had passed before I started to go across, and still the smoke was settled around there so I could not see. If the boxcars were taken away, I could not have seen the train; I might have seen it before I got up there. It was the smoke and the boxcars, too, that kept me from seeing the train. There was a lot of smoke there and that kept me from seeing the train when I stepped from behind the boxcars. I walked across slow; I looked down the track as soon as I stepped out from behind the boxcars; I walked straight across; the train was so close to me it hit me by the time I walked the distance between the sidetrack and the southbound main-line track. I could not see it for the smoke. I had been boarding by the side of the railroad for a week, and freight and passenger trains pass up and down those main-line tracks all during the day and night; I never counted them, they pass there often. Yes, sir; I stepped right up there and couldn't see the train for the smoke; I could have heard it if they had rung the bell; I was trusting entirely to hearing the bell. I looked for a train. Sure I trusted to the whistle; I didn't trust altogether to hearing the whistle; I trusted some to my eyes, but I couldn't see anything. I could not see the engine on the track in front of me for the smoke. I had not started across over there to jump on there and ride that train to the depot. It was a clear day."
His Honor, among other things, charged the jury as follows:
"1. If the jury find as a fact from the evidence that the boxcars referred to were from fifty to seventy feet north from the steps, then I charge you that the presence of the boxcars is not material upon any aspect of this case; that is, that the presence of the boxcars does not tend to show negligence on the part of the defendant, nor is the plaintiff thereby in any degree relieved of the duty to exercise the usual care on account of the presence of the said boxcars.
"2. Unless you shall find as a fact from the evidence that the smoke was so thick and heavy that the train that struck the plaintiff could not be seen by him, then I charge you to answer the second issue `Yes,' even though you may find as a fact that there was no signal given of the approach of the train.
"3. Unless you find as a fact from the evidence that the boxcars were so close to the steps as to interfere with the sight of the approaching train, or that the smoke was so thick and heavy that the train could not be seen by the plaintiff, then I direct you to answer the second issue `Yes,' even though there was no signal or warning given of the approach of the train. *Page 417 
"4. It was the duty of the plaintiff to use both his sense of sight and sense of hearing, and the law does not permit him to rely altogether upon the expectation that the train would give a warning of its approach by bell or whistle."
The plaintiff excepted to each instruction.
The jury answered the first issue as to negligence in favor of the plaintiff, and the second as to contributory negligence in favor of the defendant.
There was a judgment for the defendant, and the plaintiff appealed.
It is rare that negligence or contributory negligence is dependent on a single fact, and, on the contrary, it is to be determined by a consideration of all the relevant surrounding circumstances.
One fact, separated from others, may have little or no bearing, and by the process of elimination, all ground for the contention that negligence exists on the part of the plaintiff or defendant may be removed, when, if all the circumstances are considered together, the inference of negligence is manifest.
We do not, therefore, approve the practice of making single instances the basis of instructions, although sometimes permissible, but if there is error in the instructions given by the court, and the subject of exception, it is immaterial, because, in our opinion, the plaintiff is guilty of contributory negligence on his own evidence, as he admits that he left a place of safety at the end of the boxcars and walked a distance of eight feet, on a clear day, on to a track, where he knew trains were constantly passing, when he was enveloped with smoke, an obstruction that would be removed in a moment, and when he says "I waited until the northbound train had passed before I started across, and still the smoke was settled around there so I could not see," and again: "I walked across slow; I looked down the track as soon as I stepped out from behind the boxcars; I walked straight across; the train was so close to me it hit me by the time I walked the distance between the sidetrack and the southbound main-line track. I could not see it for the smoke."
One who voluntarily goes on a railroad track, where the view is unobstructed, and fails to look and listen, cannot recover damages for an injury, which would have been avoided if he had done so.
The duty to look and listen may be qualified by obstructions and other circumstances, and when these appear the question of contributory negligence is ordinarily for the jury.
He is not required to look continuously when he has been misled by the failure of the company to give notice of the approach of its train, *Page 418 
or where his attention is rightly directed elsewhere, and he cannot be expected to look in both directions at the same time.
These principles are established by Cooper v. R. R., 140 N.C. 209; Inmanv. R. R., 149 N.C. 123; Farris v. R. R., 151 N.C. 483; Fann v. R. R.,155 N.C. 136; Johnson v. R. R., 163 N.C. 431; Penninger v. R. R.,170 N.C. 475; Perry v. R. R., at this term, and in other cases, but they are not determinative of the present appeal, because in all of them, where obstructions were present, they were not temporary and fleeting, while in this case the plaintiff was prevented from seeing the approaching train by the smoke of another train, which would have been lifted or removed in a moment of time.
If the plaintiff had a bandage across his eyes the law would not permit him to walk on a track, where he might reasonably expect a train, without removing it, and the smoke was as effective as the bandage would be in obscuring or blotting out the vision, for the time, and almost as easily and speedily gotten rid of.
As said in Oleson v. R. R., 32 L.R.A. (Ind.), 152: "Under the circumstances, it was his duty to wait in a place of safety until he could see and hear, and thus, with reasonable certainty, ascertain that no westbound train was approaching on the south track. If the obstruction had been of a permanent character, the question would be a different one, but here the smoke was, as he knew, but a temporary obstruction; and, if he had but waited a few moments, he could have seen the approaching train, and avoided the injury."
In West Keresy Railroad Co., v. Ewan, 55 N.J. L., 574, the plaintiff was held to have been negligent in going upon a railroad track while the noise and smoke of a train that had just passed deprived him temporarily of the power to see clearly and hear distinctly. The plaintiff traveling along the street on foot in the day time came to the defendant's intersecting railroad, which consisted of three tracks. He stopped upon the first track, which was not in use, for a freight train going towards his left on the furthest track to pass the crossing. This train made a "tremendous noise," and emitted smoke which settled down upon the tracks. When the freight train had passed, then, knowing that the middle track was used for train coming from his left, he looked towards the left, and seeing nothing but smoke upon the track, and hearing no whistle or bell, he proceeded to walk across at his usual gait, and was struck by train coming from the left on the middle track. After a recitation of these facts, the Court said: "From these circumstances it is apparent that the plaintiff, without any reason for haste, went upon the track when it was evident to him that he would neither see nor hear any train which he was aware might be approaching, and when the causes of his inability to see and hear were so fleeting that in a few *Page 419 
seconds they would have gone. It seems indisputable that such conduct was negligent. In the exercise of reasonable prudence, a man could not expose his life to a peril which he knew might be imminent, if a delay of a few minutes would assure him of safety, unless impelled by some motive of extreme urgency."
The same principle is stated by the editor and annotator in the note toWallenburg v. Mo. P. R. Co., 37 L.R.A. (N.S.), 144, as follows: "It is negligence per se to attempt to cross a track hidden by the smoke from a passing train without waiting for a clear view. Heaney v. Railroad Company,122 N.Y. 122; West Keresy Railroad v. Ewan, 55 N.J. L., 574; Lortz v.Railroad Company, 83 Hun., 271; Hovenden v. Railroad, 180 Pa., 244."
The same doctrine is laid down in 22 R. C. L., 1033, and in numerous other authorities, some of which are referred to in the cases cited, and being in our opinion just and based upon reason, we must apply it.
We have come to this conclusion on the facts of this case, and after considering the different cases in our reports in which recoveries were sustained in behalf of plaintiffs, which we have no disposition to disturb.
No error.