### L. BAKER v. HIGH POINT, THOMASVILLE AND DENTON RAILROAD COMPANY.

(Filed 30 March, 1932.)

**Railroads D b—Held: motion of nonsuit on ground that plaintiff was guilty of contributory negligence should have been overruled.**

Where the evidence tends to show that the view of the defendant's tracks at a grade crossing in a city was obstructed on the left, as the plaintiff approached the crossing, by a curve and embankment, and that the plaintiff upon approaching the crossing looked to the right where the view was unobstructed for about 200 feet and did not see the defendant's engine, and then looked to the left, and that when he again looked to the right the wheels of his automobile were upon the rails of the first track and that he saw the defendant's train almost upon him approaching from the right on the second track, and that in attempting to speed

up and get across the crossing the plaintiff was struck and injured: *Held,* the plaintiff's act in giving more attention to the direction where the probability of danger was greatest and his attempt to get across the crossing in front of the train will not bar his recovery as a matter of law, and the defendant's motion as of nonsuit on the ground of contributory negligence should have been overruled, the question of contributory negligence being for the jury under the standard of reasonable prudence.

CIVIL ACTION, before *Warlick, J.,* at October Term, 1931, of GUILFORD.

The evidence tended to show that the tracks of defendant cross at grade, West Green Street, within the corporate limits of the city of High Point. At said crossing Green Street runs approximately north and south, and the tracks of the defendant run approximately in a northeasterly and southwesterly direction. An ordinance of the city of High Point imposed upon railroad companies operating within the city limits the duty of keeping all grade crossings "in a smooth, level, clean and perfectly safe condition at all times by paving same with wood, brick, concrete, or other suitable materials," etc.

On 27 April, 1929, at 6:30 o'clock in the morning the plaintiff was driving a Ford Sedan in a northerly direction on West Green Street and approached the crossing. He said: "As I approached the intersection I looked up and down the track. I looked to my right first, because that was an open view that way, and if I had looked the other way I could not have seen anything on account of that curve there on the track. So I looked to the right first. I didn't see any train or locomotive after I looked and couldn't see nothing coming on the right. I threw my eyes to the left, and there was a fellow there turned around, and I was pretty nearly on the track, and I threw my eyes to the right again where the engine was. I didn't see any train or locomotive after I looked, and couldn't see nothing coming on the right. There was no signal given of the approach of this engine or locomotive, no whistle was blown, no bell was ringing. There was no watchman at the crossing. . . . I was right on the first track before I saw the engine coming. The crossing was very rough, it had never been paved. . . . There was nothing but dirt there between the track and when a car goes over one railroad track there it will knock out a hole. . . . It was just in holes there where the cars and crossing had knocked it out. . . . The track was sticking up above the ground. In some places it was the full height of the irons. . . . It was not paved with wood, brick, concrete or other suitable material. . . . I think I was already on the first track when I saw the locomotive which was on the second track. I don't think I was going over six or eight miles an hour at the outside when I saw the locomotive. In an effort to get to a place of safety I just put on all the speed I could to get across. I didn't get across

. . . because the crossing was so rough and I had slowed down so that I couldn't get speed enough to get across before it got me. The locomotive struck my car on the back door and tore it all to pieces. . . . I was about 67 feet from the track when I threw my eyes to the right and could see no train coming, and then I threw my eyes to the left and kept looking to see if there was a train to my left, and when I got to where I could see that there was no train coming from the left, then I threw my eyes to the right again and the train was there. . . . The train that struck me was just an engine and tender. . . . There is a high embankment on the left between the crossing and the overhead bridge. There is a deep cut between the bridge and the crossing. When a person is 67 feet from the first track approaching from the south, the way I was going, you can see 216 feet to the right by the corner of the warehouse down the track. Before you can see to your left you are nearly on the tracks. Your car is nearly on the track when you can see yourself clear under the bridge because it curves back in a V-shape there. That high bank comes down in a sharp dip from between the railroad and the street."

There was evidence tending to show that the plaintiff discovered the locomotive and tender approaching from his right at about the time he reached the first track, and that he attempted to speed up his car and cross ahead of the locomotive which was on the second track.

The cause was heard in the municipal court of the city of High Point, and at the conclusion of plaintiff's evidence, there was judgment of nonsuit upon the ground "that plaintiff was guilty of contributory negligence, as a matter of law, said contributory negligence being a proximate cause of his injury." Thereupon the plaintiff appealed to the Superior Court and after hearing the exceptions the trial judge overruled the judgment of the municipal court of High Point and remanded the case for trial.

From judgment of the Superior Court the defendant appealed.

*Frazier & Frazier and H. L. Koontz for plaintiff.*
*Lovelace & Kirkman for defendant.*

BROGDEN, J. There was evidence tending to establish the negligence of defendant. However, if the plaintiff approached the crossing in the day time, and within a distance of 67 feet therefrom, had an unobstructed vision of the track for over 200 feet, and undertook to cross without looking and listening, he would not be entitled to recover. But the evidence tends to show that the crossing was obstructed by a curve and embankment to the left thereof as plaintiff approached. The testimony was: "Before you can see to your left you are nearly on the

track." Hence it cannot be said that plaintiff is barred of recovery as a matter of law because he gave more attention to the direction where the probability of danger was greatest. His conduct under all the circumstances must be tested by the standard of reasonable prudence. Upon this aspect of the case, the following declaration of the Court in *Lee v. R. R.,* 180 N. C., 413, 105 S. E., 15, is pertinent: "One who voluntarily goes on a railroad track, where the view is unobstructed, and fails to look and listen, cannot recover damages for an injury, which would have been avoided if he had done so. The duty to look and listen may be qualified by obstructions and other circumstances, and when these appear the question of contributory negligence is ordinarily for the jury. He is not required to look continuously when he has been misled by the failure of the company to give notice of the approach of its train, or where his attention is rightly directed elsewhere, and he cannot be expected to look in both directions at the same time."

There is evidence tending to show that after the plaintiff discovered the engine moving on the second track that he attempted, in disregard of his own safety, "to beat the engine to the crossing." These matters, however, must be submitted to a jury for its determination upon all the facts and circumstances.

Affirmed.